JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Darnell Stribling, appeals from a common pleas court judgment finding him guilty of one count of drug possession and two counts of drug trafficking and sentencing him to one year of imprisonment on each count, to be served consecutively. He first argues that his convictions contravened the manifest weight of the evidence. Second, he contends that he was deprived of his rights to equal protection of the laws and to trial by jury when the prosecutor used peremptory challenges to remove two of three African-Americans in the venire. Third, he complains that the court erred by allowing the state to elicit irrelevant testimony from which the jury could have drawn improper conclusions. His fourth assignment of error contends that his attorney provided him with ineffective assistance. Finally, he asserts that the drug trafficking and drug possession charges are allied offenses which should have been merged at sentencing. We find no error prejudicial to appellant occurred at trial. However, we agree that the drug trafficking and drug possession charges should have been merged at sentencing. Therefore, we affirm in part and vacate in part.
 Facts and Procedural History {¶ 2} Appellant was charged in a four-count indictment filed April 27, 2007, with one count of drug possession, two counts of drug trafficking, and one count of possession of criminal tools. He filed a motion to suppress evidence which the court denied immediately before trial.
 {¶ 3} During voir dire, Juror No. 5 identified herself as Ms. Coleman, a registered *Page 4 
nurse. When asked what she thought about this case, she said "I feel like this. Everybody has some kind [of] addiction, or problem. * * * But it doesn't matter what it is. It's just everyone has one. And you have to weed it out, what is right from what is wrong." She also disclosed that she had been on the police force in Enid, Oklahoma and that her cousin is a former Cuyahoga County prosecutor and is now a criminal defense attorney.
 {¶ 4} Juror No. 7, Mr. Elma, stated that he had a lot of friends and family members who were in trouble with drugs. He said that he could be fair to both sides, but conceded that he might "possibly" have trouble dealing with the issues in this case. He later said that a close family member had been charged with drug possession, but the drugs had been planted on that person. He conceded that he did not want to sit as a juror in this case.
 {¶ 5} The state used its peremptory challenges to excuse Juror No. 7 first. In his place, Ms. Hamilton, another African-American, was seated. Ms. Hamilton stated that she "didn't see any reason why I couldn't be fair."
 {¶ 6} Thereafter, the state excused Juror No. 5. The court noted at sidebar that the prosecutor had moved to excuse Juror No. 5 for cause, but the court had denied that motion. Defense counsel objected to her removal from the jury and argued that the state was "trying to cull the jury of black jurors in this case." The court overruled this objection. It determined that Mr. Elma "did not want to be here, period * * * * I could have excused him for cause." It further noted that Ms. Coleman had a "peculiar theory" about addiction which "would make you wonder about her ability to serve fairly." Therefore, the court concluded that it did not need to inquire further and overruled appellant's objection. *Page 5 
 {¶ 7} After the jury was empaneled and sworn, the state presented the testimony of Cleveland police lieutenant Jerome Barrow, informant Acandria Shirley, scientific examiner Scott Miller, and Cleveland police detectives David Sims, George Redding, and Anthony Spencer. The defense presented testimony from appellant, his girlfriend, Maria Higgins, his sister, Shinita Stribling, his mother, Lucille White, and his landlord and employer, William Sancho. At the conclusion of the trial, the jury returned verdicts finding appellant guilty of drug possession and two counts of drug trafficking, and not guilty of possession of criminal tools. The court sentenced appellant to one years' imprisonment on each count, to be served consecutively.
 {¶ 8} Lieutenant Barrow testified that he was supervising a "buy-bust" operation on April 1, 2007, in which a confidential informant purchased illegal drugs with money that had been photocopied by the police, and the police then arrested the sellers. He was particularly in charge of the "take-down cars" and the arrest of the suspects. He identified the photocopies he had made of a $5 bill and five $1 bills and matched them to currency recovered from appellant.
 {¶ 9} Barrow said that on April 1, 2007, Detective Spencer informed him via police radio that a controlled buy had been made. Barrow then instructed the take-down vehicles not to arrest the suspect until he had left East 78th Street. The vehicle was kept under constant surveillance, and the arrest was effected at East 73rd Street and St. Clair Avenue. Appellant, the passenger in the right rear seat, was removed from the car, placed under arrest, and searched; the buy money was found in appellant's pockets. *Page 6 
 {¶ 10} Ms. Shirley testified that she helped police with drug buy-bust operations. On April 1, 2007, she was working with Detective Spencer on East 79th Street between St. Clair and Superior Avenues. She met a woman she knew as "Snake" on the street; Snake and another woman tried to help Ms. Shirley "get a buy." Snake invited Shirley to her house. Detective Spencer, posing as Shirley's boyfriend, drove Shirley to Snake's house. Snake and Shirley went inside. Shortly thereafter, Shirley came back outside to wait for someone to come with drugs. Spencer yelled at her to hurry. Snake made a second telephone call and reported that "he will be here in about five minutes." Shirley told Spencer, who again told her to hurry.
 {¶ 11} A Ford vehicle with thirty-day tags pulled up. There were two women in the front of the vehicle and one male in the back, whom Ms. Shirley identified as appellant. They went into the house to the kitchen. She gave appellant $10 and he gave her a plastic bag containing crack cocaine. She broke off a piece of the crack for the "house." As she was leaving, appellant also came out of the house, went to his car, then returned to the house.
 {¶ 12} Ms. Shirley got into Spencer's car. When appellant came out of the house again, she pointed him out to Spencer as the person who had sold her the crack. She gave Spencer the crack cocaine, and Spencer put it into an evidence bag. She identified state's Exhibit 2 as the crack cocaine she had purchased from appellant.
 {¶ 13} Ms. Shirley and Spencer watched appellant go back and forth from the car to the house once or twice, then appellant got into the car and left. Appellant passed Shirley *Page 7 
and Spencer, they identified appellant, then other police vehicles pulled appellant over.
 {¶ 14} Detective Sims testified that he acted as a "spotter" on April 1, 2007, observing and relaying information to Detective Spencer about persons and activity in the targeted area. He saw Ms. Shirley get out of Spencer's car and approach a porch. He also saw a male arrive in the back seat of a four-door Ford; two females were in the front seat. The male-appellant — got out of the car and went into the house. He left the house and went back to the car, then returned to the house. He came out of the house again with Ms. Shirley and returned to the car while Ms. Shirley got into Detective Spencer's car. Detective Sims testified that this behavior was consistent with selling drugs.
 {¶ 15} Detective Sims said that when appellant left the house, his car proceeded north on East 78th Street; Sims informed other vice officers on the "take-down team." The take-down team then moved in, stopped the vehicle and arrested appellant.
 {¶ 16} Scientific examiner Scott Miller testified that he performed three standard tests on the substance Ms. Shirley purchased from appellant, and it tested positive for cocaine. Detective Redding testified that, in his role as part of the take-down team, he got appellant out of the back seat of the car, patted him down and found currency in his left front pants pocket that included five $1 bills that were part of the buy money Ms. Shirley used to purchase the crack cocaine. Another detective found the other part of the buy money, a $5 bill, on appellant's person. Another $693 was also recovered from appellant.
 {¶ 17} Detective Spencer testified that he "handled" the informant during the buy-bust operation at issue here. He testified that he role-played with Ms. Shirley to blend into the *Page 8 
environment and to encourage a quick transaction. After Ms. Shirley got out of the car, she was approached by two women. Ms. Shirley came back to the car and told him they could go to a house around the corner and have someone bring drugs there. He and Ms. Shirley went to that house. The informant spent some time with the women, then they went inside. Ms. Shirley came back outside and told him that someone was coming to make a delivery. While Ms. Shirley waited outside, he yelled at her from the car to hurry.
 {¶ 18} Appellant arrived in the back seat of a car, with two women in the front. He got out of the car and went onto the porch, then everyone went inside. A few minutes later, appellant came out of the house then went back in, then Ms. Shirley came out and got into Spencer's car. She gave him a rock of crack cocaine, which he immediately placed in an evidence bag. They then pulled away and traveled approximately 10 houses north and turned around. Spencer saw appellant get back in the car and travel north on East 78th Street; Ms. Shirley identified him as the person who had sold her the crack cocaine.
 Law and Analysis
Assignment of Error I: Manifest Weight of the Evidence. {¶ 19} In his first assignment of error, appellant argues that his convictions are against the manifest weight of the evidence. In assessing the weight of the evidence, we must review the entire record, consider the "inclination of the greater amount of credible evidence," and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that a new trial must be ordered. See, e.g., *Page 9 State v. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52.
 {¶ 20} Appellant argues that the jury's assessment of the credibility of the evidence was faulty in two respects. First, appellant claims that the authenticity of the material tested by the scientific examiner was not established because the police testimony did not detail the entire chain of custody of the crack cocaine. There was no direct testimony about the custody of Exhibit 2 from the time Detective Spencer received it from Ms. Shirley on April 1, 2007 until the scientific laboratory received it for testing on April 3, 2007. This was a "critical" time in the chain of custody. In re Lemons (1991), 77 Ohio App.3d 691, 695. On the other hand, however, there was no evidence that Exhibit 2 was mishandled or lost during this critical juncture either. Ms. Shirley identified Exhibit 2 as the item she received from appellant, and Detective Spencer testified that Exhibit 2 was the item he received from Ms. Shirley. This evidence supports the inference that the material tested by the scientific examiner was the item Ms. Shirley received from appellant. State v. Conley (1971), 32 Ohio App.2d 54, 62. The absence of direct evidence of a complete chain of custody for the crack cocaine does not weigh so heavily against appellant's conviction that the conviction contravenes the manifest weight of the evidence.
 {¶ 21} Second, appellant asserts that there was an inconsistency between Ms. Shirley's testimony that appellant was disappointed to learn that she wanted to purchase only a small amount of cocaine and police testimony that no additional drugs were recovered from appellant. There was testimony that appellant made one or more trips between the car and the house after Ms. Shirley returned to Detective Spencer's car. A reasonable jury could *Page 10 
infer from this that appellant sold any additional drugs he may have had to other persons on the premises. Thus, the apparent inconsistency was explicable; appellant has not shown that the jury clearly lost its way. Therefore, we overrule the first assignment of error.
Assignment of Error II: Equal Protection/Batson. {¶ 22} In his second assignment of error, appellant contends that he was deprived of the equal protection of the laws when the prosecutor used two of his four peremptory challenges to remove two of the three African-Americans in the venire. "[T]he State denies a black defendant equal protection of the laws when it puts him on trial before a jury from which members of his race have been purposefully excluded."Batson v. Kentucky (1986), 476 U.S. 79, 85. In Batson, the Supreme Court held that the Equal Protection clause precludes the state from exercising its privilege to strike jurors through peremptory challenges solely because of the potential jurors' race. Id. at 89.
 [A] defendant may establish a prima facie case of purposeful discrimination in selection of the petit jury solely on evidence concerning the prosecutor's exercise of peremptory challenges at the defendant's trial. To establish such a case, the defendant first must show that he is a member of a cognizable racial group, Castaneda v. Partida, supra [430 U.S. 482,] at 494, and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits "those to discriminate who are of a mind to discriminate." Avery v. Georgia, 345 U.S., at 562. Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race. This combination of factors in the empaneling of the petit jury, as in the selection of the venire, raises the necessary inference of purposeful discrimination.
Id. at 96. Once this showing has been made, the burden shifts to the state to provide a *Page 11 
neutral explanation for its actions. Id. at 97.
 {¶ 23} We agree with the common pleas court that appellant failed to demonstrate a prima facie case of purposeful racial discrimination. There is no dispute that appellant is African-American and thus a member of a cognizable racial group, but this fact alone does not allow the inference that peremptory challenges to any African-American venireman were based on race. Two of the twelve jurors originally seated were African-American.[1] One of these — Mr. Elma — was excused when the state exercised its first peremptory challenge. Mr. Elma had expressly stated that he did not want to sit as a juror in this case. He opined that police had planted drugs on a close family member. It is apparent that the state had non-discriminatory reasons for excusing Mr. Elma. Another African-American — Ms. Hamilton-was seated in his place, so the racial composition of the venire did not change as a result of this action.
 {¶ 24} The state used its third peremptory challenge to excuse Ms. Coleman. There are no circumstances which indicate that this challenge was based on her race. Therefore, we overrule the second assignment of error.
Assignment of Error III: Irrelevant/Prejudicial Testimony. {¶ 25} Third, appellant claims that he was deprived of a fair trial when the state elicited certain testimony. First, appellant complains that Detective Spencer was allowed to *Page 12 
testify that part of the money found on appellant's person was counterfeit. The prosecutor did not intentionally elicit this testimony, and did not further explore or argue it. Even if it was hearsay, appellant cannot show that he was prejudiced by its admission. It is irrelevant to the charges. No inference can be drawn that appellant knew the money was counterfeit.
 {¶ 26} Appellant also complains that Detective Spencer was permitted to testify about the dangers faced by informants when they participate in buy-bust operations and testify at trial. Appellant did not object to this testimony at trial. The testimony was relevant to the jury's assessment of Ms. Shirley's credibility and motive for testifying. Therefore, it was properly admitted.
 {¶ 27} Finally, appellant challenges the prosecutor's cross-examination of appellant concerning his prior convictions. Appellant testified that he was previously convicted of failure to comply with an order or signal of a police officer, receiving stolen property and drug possession. On cross-examination, the prosecutor inquired:
 Q. Mr. Stribling, do you remember also, having a digital scale in your possession at that time?
 A. No, I don't.
 Q. You do not remember that?
 A. No. Because it wasn't my car.
 Q. It wasn't your car?
 A. Exactly.
 * * * * *Page 13 
 Q. So if there was a digital scale in that car, that would have [belonged to the owner of the car] too?
 A. I mean, I don't know. * * * *
 Q. Well, I'm a little confused. You say you are not a drug dealer. You mentioned digital scales being something drug dealers might have, and you have got a digital scale on your person when you are arrested for leading police on a high speed chase?
 A. And all I had on me was a personal blunt. I didn't have no, I didn't have no drugs on me.
 * * * *
 {¶ 28} Appellant's counsel did not object to this testimony, so we must evaluate it using a plain error standard. Crim. R. 52(B) allows this court to recognize plain errors affecting substantial rights. We agree that the prosecutor's last question quoted above was erroneous. The question lacked any factual basis, and attempted to create the improper inference that because appellant had a scale at the time of his prior arrest (an alleged fact the state did not prove), and because he admitted that having a digital scale was a sign of being a drug dealer (a statement made by appellant's girlfriend, not by appellant), appellant admitted that he was a drug dealer. From this, the jury could draw the additional improper inference that because he was a drug dealer, he trafficked drugs in this case.
 {¶ 29} However, we cannot look at this inquiry in isolation. The prosecutor never expressly argued that appellant's alleged possession of the scale at the time of his arrest in *Page 14 
the previous case demonstrated that he was a drug dealer, nor did he argue that this implied that appellant sold drugs in this case. The jury was instructed that the attorney's statements are not evidence, and that they could not draw an inference based upon another inference. There was ample evidence of appellant's guilt in this case. Therefore, we cannot say that this erroneous testimony affected the outcome of the trial.
Assignment of Error IV: Ineffective Assistance of Counsel. {¶ 30} In his fourth assignment of error, appellant contends that his attorney provided ineffective assistance. At its most basic, a claim of ineffective assistance of counsel requires the appellant to show, first, that his attorney's performance was deficient, and second, that the deficient performance prejudiced him. Strickland v. Washington (1984),466 U.S. 668, 687.
 {¶ 31} Appellant claims his attorney's performance was deficient because he failed to object to the prosecutor's closing arguments. "A reasonable attorney may decide not to interrupt his adversary's argument as a matter of strategy." State v. Franklin, 97 Ohio St.3d 1,2002-Ohio-5304, ¶ 42. Therefore, we find appellant has not shown that his attorney's performance was deficient.
Assignment of Error V: Allied Offenses. {¶ 32} Finally, appellant argues that drug trafficking and drug possession are allied offenses of similar import which should have been merged. Therefore, he claims, his sentence should be reduced. Appellant has also supplied us with a notice of supplemental authority bringing to our attention the Ohio Supreme Court's recent decision in State v. *Page 15 Cabrales, 118 Ohio St.3d 54, 2008-Ohio-1625. The state concedes thatCabrales is seemingly dispositive, but argues that this case should be distinguished from it.
 {¶ 33} In Cabrales, the Ohio Supreme Court held that the offenses of drug trafficking and drug possession are allied offenses of similar import pursuant to R.C. 2941.25(A), and therefore the defendant in that case could not be convicted of both offenses. In reaching this conclusion, the court applied a two-step analysis, first determining whether the elements of the offenses corresponded to such a degree that the commission of one crime would result in the commission of the other, and secondly determining whether the defendant's crimes were committed separately or with a separate animus. The court determined that the commission of drug trafficking necessarily resulted in drug possession, because one must possess — that is, have control over — the substance in order to ship it, deliver it, distribute it or prepare it. Furthermore, the court determined that the defendant trafficked and possessed the drug with a single animus: "to sell it." Id. at ¶ 31. Therefore, the court concluded that the offenses were allied offenses of similar import.
 {¶ 34} Likewise, in this case, the transport of the crack cocaine at issue necessarily included possession of it. State v. Whitfield, Cuyahoga App. No. 90244, 2008-Ohio-3150, ¶ 36. The state argues that appellant possessed the crack cocaine then transported it, then sold it, thus establishing a separate animus for each offense. Such fine distinctions are lost in the single course of conduct at issue here. Accordingly, we vacate appellant's conviction and sentence for drug possession. Having found no other error in the proceedings below, however, we affirm appellant's convictions and sentences for drug trafficking as charged in *Page 16 
counts two and three of the indictment.
Affirmed in part; vacated in part.
It is ordered that appellant recover from appellee costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution. The conviction and sentence for drug possession as charged in count one is hereby vacated. The defendant's remaining convictions for drug trafficking as charged in counts two and three having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence on the defendant's convictions for drug trafficking as charged in counts two and three.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
COLLEEN CONWAY COONEY, P.J., and ANTHONY O. CALABRESE, JR., J., CONCUR
[1] We have no evidence of the race of the veniremen. However, the parties seemingly agree that Ms. Coleman, Mr. Elma, and Ms. Hamilton were the only African-Americans on the venire. *Page 1