[Cite as *State v. Carpenter*, 2019-Ohio-4829.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2019-03-044 |
| | : | O P I N I O N |
| - vs - | | 11/25/2019 |
| | : | |
| DAMON CARPENTER, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR2018-09-1674

Michael T. Gmoser, Butler County Prosecuting Attorney, John Heinkel, Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for appellee

Engel & Martin, LLC, Mary K. Martin, 4660 Duke Drive, Suite 101, Mason, Ohio 45040, for appellant

**RINGLAND, P.J.**

{¶ 1} Damon Carpenter appeals his convictions in the Butler County Court of Common Pleas for possession of and trafficking in heroin. For the reasons that follow, this court affirms Carpenter's convictions.

{¶ 2} On September 12, 2018, Hamilton police officers on neighborhood patrol observed a Mercedes-Benz sedan stopped in a convenience store parking lot. They

observed a man briefly lean into the vehicle window and then walk towards the store. One of the officers decided to run the license plate. The vehicle returned as stolen.

{¶ 3} The vehicle left the parking lot and the officers soon initiated a traffic stop. Carpenter was driving the vehicle and there was one passenger. Officers removed Carpenter and the passenger without incident.

{¶ 4} In a subsequent search of the vehicle, officers recovered approximately 20 grams of heroin hidden underneath the lid to the gas tank cap. They recovered two cellular phones from the vehicle. Carpenter admitted owning the phones. Police also found $685 in cash in Carpenter's possession.

{¶ 5} Police arrested Carpenter. In October 2018, a Butler County grand jury indicted Carpenter with Count One, possession of heroin, a violation of R.C. 2925.11(A), and a second-degree felony. The grand jury further indicted Carpenter with Count Two, trafficking in heroin, a violation of R.C. 2925.03(A)(2), and a second-degree felony. Count Two also contained a forfeiture specification with respect to the $685 in cash, which the indictment alleged was the proceeds of illegal activity.[1]

{¶ 6} Carpenter remained incarcerated while awaiting trial. Prior to trial, he moved the court to dismiss based on a speedy-trial violation. The court held a hearing at which it determined that Carpenter would be brought to trial consistent with his speedy-trial rights and therefore denied the motion.

{¶ 7} The matter proceeded to a jury trial. Ciara Roberts testified for the state. Roberts' mother owned the Mercedes-Benz. Roberts admitted stealing the vehicle from her mother on September 11, 2018. That same day, she drove the vehicle to the Lindenwald neighborhood of Hamilton and met with Carpenter. She gave him the vehicle in exchange for

---

1. The grand jury also indicted Carpenter for counts of receiving stolen property and driving under suspension. However, the state dismissed these charges prior to trial.

about $100 worth of heroin and methamphetamine.

{¶ 8}   The state introduced corroborating text messages from Roberts' phone, sent on September 11, to one of Carpenter's phone numbers.  The messages indicate that Roberts has a Mercedes-Benz for Carpenter and that she is "trying to make some dope."  She asks whether Carpenter has any "boy or ice."  Roberts testified that "boy" is slang for heroin and "ice" is slang for methamphetamine.

{¶ 9}   Roberts testified that she was familiar with Carpenter and had known him for seven years.  She was aware that Carpenter would usually keep drugs on his person or "in the gas tank."

{¶ 10} The state also introduced incoming and outgoing text messages between Carpenter's two cellular phone numbers and unknown numbers.  The time frame of the messages was between the time the vehicle was reported stolen, in the afternoon of September 11, until the time of Carpenter's arrest in the afternoon of September 12.  Generally, the texts messages indicate drug trafficking activity, i.e., requests for narcotics using slang terms and questions concerning where to meet.  The messages include requests for "boy" and refer to several locations in the Lindenwald neighborhood of Hamilton.

{¶ 11} Carpenter rested his defense case without presenting witnesses or other evidence.  However, Carpenter and the state agreed to a stipulation that was presented to the jury.  The parties stipulated that on September 11, 2018, a law firm had provided Carpenter with a settlement check for $3,824.06.

{¶ 12} The jury found Carpenter guilty of both counts of the indictment.  However, the jury found that the $685 in cash was not subject to forfeiture.  Carpenter appeals, raising two assignments of error.

{¶ 13} Assignment of Error No. 1:

{¶ 14} APPELLANT'S SPEEDY TRIAL RIGHTS WERE VIOLATED.

{¶ 15} Carpenter argues that the state violated his statutory and constitutional rights to a speedy trial when it brought him to trial in excess of 90 days after his incarceration. He contends that he was not responsible for the delay in scheduling his trial and he never waived his speedy-trial rights.

{¶ 16} The right to a speedy trial is guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and by Section 10, Article I of the Ohio Constitution. *State v. Taylor*, 98 Ohio St.3d 27, 2002-Ohio-7017, ¶ 32; *State v. Miller*, 12th Dist. Warren No. CA2009-01-008, 2009-Ohio-4831, ¶ 8. The General Assembly enacted Ohio's speedy-trial statutes to preserve this right. *Taylor* at *id.* Compliance with these statutes is mandatory and the statutes "must be strictly construed against the state." *Id.*, citing *State v. Cox*, 12th Dist. Clermont No. CA2008-03-028, 2009-Ohio-928, ¶ 12.

{¶ 17} R.C. 2945.73(B) provides that "[u]pon motion made at or prior to the commencement of trial, a person charged with an offense shall be discharged if he is not brought to trial within the time required by sections 2945.71 and 2945.72 of the Revised Code." When an accused is charged with a felony, he must be brought to trial within 270 days after the date of his arrest. R.C. 2945.71(C)(2). When an accused is held in jail on the pending charge in lieu of bail, each day is counted as three days. R.C. 2945.71(E). Thus, an incarcerated defendant, charged with a felony, is entitled to be brought to trial within 90 days after arrest.

{¶ 18} Once a defendant demonstrates he was not brought to trial within the permissible time period, the accused presents a prima facie case for dismissal based on a speedy-trial violation. *Miller* at ¶ 9. The burden then shifts to the state to prove that time was sufficiently tolled, and the speedy-trial time period extended. *Id.*

{¶ 19} "Upon review of a speedy-trial issue, a court is required to count the days of delay chargeable to either side and determine whether the case was tried within the applicable time limits."  *State v. Sanchez*, 110 Ohio St.3d 274, 2006-Ohio-4478, ¶ 8. R.C. 2945.72 enumerates instances in which the time period that a defendant must be brought to trial in may be extended.

{¶ 20} Appellate review of speedy-trial issues involves a mixed question of law and fact.  *State v. Messer*, 12th Dist. Clermont No. CA2006-10-084, 2007-Ohio-5899, ¶ 7.  An appellate court must give due deference to the trial court's findings of fact if they are supported by competent, credible evidence.  The appellate court then independently reviews whether the trial court correctly applied the law to the facts of the case.  *Id.*

{¶ 21} Police arrested Carpenter on September 12, 2018.  He remained incarcerated while awaiting the trial that occurred on January 23, 2019.  Thus, 132 days elapsed between incarceration and trial and Carpenter presented a prima facie case for a speedy-trial violation.  However, the following relevant events occurred after Carpenter's incarceration:

- *October 30, 2018:*  Carpenter's counsel files various discovery requests of the state and request for a bill of particulars.

- *November 13, 2018:*  Carpenter's counsel files a motion to withdraw based upon a conflict of interest.  The court grants the motion the same day and indicates in the entry it will appoint substitute counsel.

- *November 13, 2018:*  Court issues pretrial order setting a trial date of December 26, 2016.

- *November 14, 2018:*  New counsel appears, files various

discovery requests of the state.

- *November 19, 2018:* State responds to Carpenter's discovery requests.

- *November 27, 2018:* Court issues new pretrial order rescheduling trial date from December 26, 2018 to January 23, 2019. The entry indicates "vacate trial date at request of defense counsel." However, at a subsequent hearing on Carpenter's motion to dismiss, the court clarified that defense counsel had not specifically requested the January trial date but had merely informed the court of counsel's unavailability for trial on the originally scheduled December date. The court indicated it chose the January date.

- *December 7, 2018*: Carpenter files a pro se motion to dismiss. State moves to strike.

- *December 12, 2018:* Court strikes Carpenter's motion to dismiss.

- *December 27, 2018*: Carpenter, through counsel, files motion to dismiss based on speedy-trial violations.

- *January 8, 2019*: Court holds hearing on Carpenter's speedy-trial motion. Court denies motion.

- *January 23, 2019*: Jury trial.

{¶ 22} This court finds that speedy-trial time tolled for the following events:

- Carpenter's discovery requests, October 30, 2018 -

November 19, 2018 (20 days).[2]

- Carpenter's pro se motion to dismiss, December 7, 2018 - December 12, 2018 (5 days).[3]

- Carpenter's motion to dismiss on speedy-trial grounds, December 27, 2018 through January 8, 2019 (12 days).

- The continuance of original trial date of December 26, 2018 to the rescheduled trial on January 23, 2019 (16 days in addition to those previously tolled by Carpenter's second motion to dismiss).

{¶ 23} With respect to the continuance, speedy-trial time may be extended for "any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion." R.C. 2945.72(H). The evidence indicated that the state was prepared to try the case as originally scheduled and that trial would have been held within speedy-trial limits. The court noted that Carpenter's attorney had been newly appointed to the case from a short list of "conflict attorneys," i.e., those who could represent indigent defendants with conflicts of interest with the public defender's office. There was no evidence that any other attorney would or could have accepted this representation. New counsel timely informed the court that she was unavailable for the originally scheduled trial date. Neither Carpenter nor his attorney specifically chose the January trial date; the court chose that date as the earliest available time on its calendar. The court noted that the time of year, coinciding with two major

---

2. *State v. Brown*, 98 Ohio St.3d 121, 2002-Ohio-7040, syllabus (holding that a demand for discovery or a bill of particulars is a tolling event pursuant to R.C. 2945.72[E]). Carpenter does not argue that 20 days was an unreasonable time for the state to provide its discovery response.

3. Speedy trial time may be extended by "[a]ny period of delay necessitated by * * * motion * * * instituted by the accused * * *." R.C. 2945.72(E).

holidays, made scheduling difficult. Given the circumstances described above, a 28-day continuance of the trial was reasonable and is not chargeable to the state.

{¶ 24} Therefore, of the 132 days that Carpenter was incarcerated awaiting trial, only 79 days were chargeable to the state. Accordingly, the state brought Carpenter to trial consistent with his statutory speedy-trial rights.

{¶ 25} Next, Carpenter argues that the state violated his constitutional right to a speedy trial. When determining whether an accused was denied the right to a speedy trial as guaranteed by the Sixth Amendment, the court must consider four factors: (1) length of delay, (2) reason for the delay, (3) the accused's assertion of his right, and (4) prejudice to the accused. *Barker v. Wingo*, 407 U.S. 514, 530-532, 92 S.Ct. 2182 (1972); *State v. Davis*, 46 Ohio St.2d 444, 446 (1976).

{¶ 26} The first of the *Barker* factors, the length of delay, "is to some extent a triggering mechanism." *Barker* at 530. "Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Id.* If the defendant makes the initial threshold showing of presumptive prejudice, this court must then consider the length of the delay with the other *Barker* factors. *Doggett v. United States*, 505 U.S. 647, 652, 112 S.Ct. 2686 (1992), citing *Barker* at 533-534.

{¶ 27} Courts generally find post-accusation delay to be "presumptively prejudicial" as it approaches one year. *Id.* at 652, fn. 1. However, this is not an absolute rule and each case must be considered on its own circumstances. *State v. Johnson*, 12th Dist. Butler No. CA2011-09-169, 2013-Ohio-856, ¶ 39. Under the circumstances presented in this case, a 132-day delay between arrest and trial was not presumptively prejudicial and there is no need for this court to consider the additional *Barker* factors. This court overrules Carpenter's first assignment of error.

{¶ 28} Assignment of Error No. 2:

{¶ 29} THE TRIAL COURT ABUSED ITS DISCRETION BY PERMITTING THE STATE TO INTRODUCE IMPERISSIBLE CHARACTER EVIDENCE.

{¶ 30} Carpenter contends that the trial court abused its discretion by allowing the jury to consider the narcotics sales text communications that police recovered from his cellular phones. He argues that this was inadmissible other acts evidence and was offered only to show he acted in conformity. For the same reasons, Carpenter argues that the court improperly permitted Roberts to testify that she knew Carpenter to either store drugs on his person or in the gas cap area.

{¶ 31} As required by Evid.R 404(B), the state filed a notice to use other acts evidence, specifically describing the evidence challenged in this assignment of error. At the start of the trial, the parties and court discussed the issues raised in the notice. Carpenter objected to the evidence, claiming that the state's only purpose was to show conformity. The state argued that the evidence was admissible to show Carpenter's knowledge of the heroin found in the vehicle.

{¶ 32} The court indicated it would tentatively admit Roberts' proffered testimony based on the state's argument. With respect to the text messages, the state and Carpenter were able to compromise without the court's involvement. The state initially wished to introduce text messages from Carpenter's phones beginning September 9 through the time of the arrest on September 12. However, as the parties and court discussed the issue, the state offered to reduce the period of the text messages to begin when the vehicle was reportedly stolen, at approximately noon on September 11 and through the time of arrest on September 12. Carpenter's counsel indicated acceptance of this offer, stating: "[y]our honor, I have no issue with the text messages from the 11th – to when the car was stopped. As far

as 404(B), of course, if there is hearsay and authentication issues, we have to get through." Thus, counsel indicated Carpenter had no objection to the evidence on Evid.R. 404(B) grounds but reserved the possibility of objecting at trial based on hearsay violations or lack of authentication.

{¶ 33} During trial, the prosecutor questioned Roberts as to whether she was aware of where Carpenter stored narcotics. Carpenter did not object and Roberts answered. Later in the trial, the prosecutor questioned a police officer about the text messages and later introduced the messages as an exhibit. Carpenter objected based on hearsay and lack of authentication, which objections the court overruled. Carpenter did not object based on Evid.R. 404(B).

{¶ 34} The court's ruling with respect to Roberts' proffered testimony was liminal. A liminal ruling "is a tentative, interlocutory, precautionary ruling by the trial court reflecting its anticipatory treatment of [an] evidentiary issue." *State v. Grubb*, 28 Ohio St.3d 199, 201-02 (1986). This initial ruling did not, in and of itself, preserve the record on appeal. *Grubb* at 201-202; *State v. Hensley,* 12th Dist. Warren No. CA2009-11-156, 2010-Ohio-3822, ¶ 29. Rather, "any claimed error regarding a trial court's decision on a motion in limine must be preserved at trial by an objection, proffer, or a ruling on the record * * *." *State v. Smith*, 12th Dist. Warren No. CA2002-04-038, 2002-Ohio-6395, ¶ 12.

{¶ 35} Because Carpenter did not object to the challenged evidence on the basis of Evid.R. 404(B) when presented at trial, he has waived that argument for purposes of appeal and is limited to a review of plain error. Crim.R. 52; *Hensley* at ¶ 30. Plain error exists where there is an obvious deviation from a legal rule that affected the defendant's substantial rights, i.e., the error must have affected the outcome of the proceeding. Notice of plain error is taken with the utmost caution, under exceptional circumstances, and only to prevent a

manifest miscarriage of justice. *Id.*

{¶ 36} Evid.R. 404(B) provides that evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show conformity but may be admissible for other purposes including proof of opportunity, knowledge, intent, and identity. Similarly, the Revised Code provides:

> In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant.

R.C. 2945.59.

{¶ 37} The Ohio Supreme Court has held that "other acts" evidence is typically admissible under the "scheme, plan, or system" exception of R.C. 2945.59 in two situations: (1) when the other acts form "part of the immediate background of the alleged act which forms the foundation of the crime charged in the indictment[,]" or (2) when the identity of the perpetrator of the crime is at issue. *State v. Curry*, 43 Ohio St.2d 66, 73 (1975).

{¶ 38} In order to form part of the "immediate background" of the crime charged, the evidence must concern events that are "inextricably related" with that crime. *Id.* Stated otherwise, other acts are admissible if they are "so blended or connected with the one on trial as that proof of one incidentally involves the other; or explains the circumstances thereof; or tends logically to prove any element of the crime charged." *State v. Wilkinson* 64 Ohio St.2d 308, 317 (1980), quoting *United States v. Turner* 423 F. 2d 481, at 483-84 (7th Cir.1970).

{¶ 39} With respect to the text messages, the indictments alleged that, on or about September 12, 2018, Carpenter was guilty of possession under R.C. 2925.11(A) and

trafficking under R.C. 2925.03(A)(2). Thus, the state was required to prove that on or about September 12, 2018, Carpenter knowingly possessed heroin and knowingly transported heroin with knowledge that it was intended for sale. The text messages, recovered from cellular phones Carpenter admitted owning, consisted of incoming and outgoing narcotic-sale related communications, with specific slang references to heroin. They occurred between September 11, 2018 and September 12, 2018. The messages were sent or received in generally the same time period that Roberts testified Carpenter had possession of her Mother's stolen vehicle.

{¶ 40} Police found Carpenter driving that stolen vehicle. They ultimately recovered a large quantity of heroin hidden in the vehicle. Therefore, the text messages indicating heroin-sale activity contemporaneously with Carpenter's possession of the stolen Mercedes-Benz were inextricably related with the charged crimes. Stated otherwise, the evidence was intrinsic to the crimes charged and assisted the factfinder in determining that Carpenter knowingly possessed heroin and knowingly transported the heroin with knowledge that it was for sale.

{¶ 41} On the other hand, Robert's testimony that she was familiar with Carpenter and that he would keep his narcotics in the "gas tank" was extrinsic to the crime charged. Roberts had no personal knowledge concerning whether Carpenter had stored narcotics in her mother's stolen vehicle. However, given that the vehicle was stolen, was occupied by a second individual, and Carpenter disclaimed ownership of the seized heroin, such evidence would be admissible under Evid.R 404(B) as probative of Carpenter's identity, preparation, and plan.

{¶ 42} In this case, the probative value of such evidence would not be outweighed by the danger of unfair prejudice. This court finds no obvious deviation from a legal rule and

thus Carpenter cannot demonstrate plain error. For the foregoing reasons, this court overrules Carpenter's second assignment of error.

{¶ 43} Judgment affirmed.

PIPER and M. POWELL, JJ., concur.