[Cite as *State v. Jones*, 2020-Ohio-2672.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NOS. CA2019-01-006 |
| | | CA2019-01-008 |
| | : | |
| - vs - | : | O P I N I O N |
| | : | 4/27/2020 |
| SCOTT A. JONES, | : | |
| Appellant. | : | |


CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR2018-06-1018


Michael T. Gmoser, Butler County Prosecuting Attorney, John C. Heinkel, Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for appellee

Jon R. Sinclair, 1050 Delta Avenue, Suite 200, Cincinnati, Ohio 45208, for appellant


**S. POWELL, J.**

{¶ 1} Appellant, Scott A. Jones, appeals his conviction in the Butler County Court of Common Pleas after a jury found him guilty of one count of felonious assault. For the reasons outlined below, we affirm.

{¶ 2} On July 11, 2018, the Butler County Grand Jury returned an indictment charging Jones with one count of felonious assault in violation of R.C. 2903.11(A)(2), a second-degree felony. The charge was accompanied by a three-year firearm specification

in accordance with R.C. 2941.145(A). The charge arose after Jones used a firearm to shoot the victim, A.G., in the chest. The shooting occurred at approximately 1:00 p.m. on the afternoon of June 2, 2018, while A.G. sat in the front passenger's seat of his vehicle parked in Hamilton, Butler County, Ohio. An eyewitness to the shooting, J.P., was seated next to A.G. in the vehicle's driver's seat at the time of the shooting. After witnessing A.G. being shot by Jones, J.P. drove A.G. to the hospital. J.P. then called 9-1-1. During this call, J.P. specifically identified Jones as the individual who shot A.G. in the chest.

{¶ 3} Due to the close proximity of the shooting to the Hamilton Police Department, Jones was stopped by police within mere minutes of the shooting. Upon being stopped by police, Jones admitted he had shot A.G. stating, "I'm the one [who] popped that n***a. I'm the one that shot him. I did it." Jones also stated, "Yeah, I shot that man." Jones further claimed that he was "not a p***y" and that he was "not afraid to go back to prison." After Jones admitted that he had shot A.G., Jones was placed under arrest and taken to jail. There is no dispute that Jones had two firearms within his immediate possession at the time of his arrest, as well as a magazine of ammunition located in his front pants pocket. Once at the jail, Jones again admitted to police that he had shot A.G. Jones made this admission on video after he waived his *Miranda* rights.

{¶ 4} Beginning November 6, a two-day jury trial was held on the matter. At trial, J.P. testified that she saw Jones approach A.G., "pull something from his waist band," and shoot "three bullets and one went through [A.G.'s] chest." J.P. testified that she then heard A.G. tell Jones, "bro, you just shot me in my chest." This testimony from J.P. was in addition to the testimony from multiple police officers who heard Jones admit that he shot A.G. as outlined above. This includes Jones specifically admitting to police, after he was transported to jail, that he had shot A.G. As previously stated, Jones made this admission

on video after he waived his *Miranda* rights. Jones did not provide any testimony or evidence in his defense.

{¶ 5} Following deliberations, the jury returned a verdict finding Jones guilty as charged. After the jury found Jones guilty, the trial court sentenced Jones to a total mandatory term of 11 years in prison; eight years for the felonious assault and three years on the firearm specification. Jones now appeals his conviction, raising two assignment of error for review.

{¶ 6} Assignment of Error No. 1:

{¶ 7} THE TRIAL COURT ERRED BY ENTERING A CONVICTION FOR FELONIOUS ASSULT WHEN THERE WAS INSUFFICIENT EVIDENCE FOR THE CONVICTION.

{¶ 8} In his first assignment of error, Jones argues his conviction was not supported by sufficient evidence. We disagree.

{¶ 9} Whether the evidence presented is legally sufficient to sustain a verdict is a question of law. *State v. Grinstead*, 194 Ohio App.3d 755, 2011-Ohio-3018, ¶ 10 (12th Dist.). When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Intihar*, 12th Dist. Warren CA2015-05-046, 2015-Ohio-5507, ¶ 9. The relevant inquiry is "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. This test "requires a determination as to whether the state has met its burden of production at trial." *State v. Boles*, 12th Dist. Brown No. CA2012-06-012, 2013-Ohio-5202, ¶ 34, citing

*State v. Wilson*, 12th Dist. Warren No. CA2006-01-007, 2007-Ohio-2298, ¶ 33.

{¶ 10} As noted above, Jones was convicted of felonious assault in violation of R.C. 2903.11(A)(2). Pursuant to that statute, no person shall knowingly "[c]ause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance." A person acts knowingly when, regardless of purpose, "the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). The term "physical harm" is defined under R.C. 2901.01(A)(3) as "any injury, illness, or other physiological impairment regardless of its gravity or duration." The term "deadly weapon" means "any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon." R.C. 2923.11(A). This includes a "firearm," a term which is separately defined as "any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant." R.C. 2923.11(B)(1).

{¶ 11} Jones argues his conviction was not supported by sufficient evidence since there was "no testimony from anyone who saw him shoot [A.G.]" However, contrary to Jones' claim, J.P. testified that she was an eyewitness to the shooting while sitting next to A.G. at the time Jones shot him in the chest. J.P. in fact specifically testified that she saw Jones approach A.G., "pull something from his waist band," and shoot "three bullets and one went through [A.G.'s] chest." J.P. testified that she then heard A.G. tell Jones, "bro, you just shot me in my chest." This is direct eyewitness testimony from someone who saw Jones shoot A.G. from no more than a few feet away. Therefore, Jones' claim that his conviction was not supported by sufficient evidence since there was "no testimony from anyone who saw him shoot [A.G.]" lacks merit as it is directly contradicted by the record.

{¶ 12} Jones also argues his conviction was not supported by sufficient evidence since there no "ballistic evidence" to prove he shot A.G. with one of the two firearms that were found within his immediate possession at the time of his arrest. Jones further argues his conviction was not supported by sufficient evidence since there was no "reliable evidence" that he had used one of those two firearms to shoot A.G. Jones is essentially arguing that the state was required to prove beyond a reasonable doubt the specific identity of the firearm he used to shoot A.G. in order to secure a conviction for felonious assault in violation of R.C. 2903.11(A)(2). The state, however, was not required to prove *which firearm* Jones used to shoot A.G. to secure a conviction. The state was only required to prove Jones used *a firearm* to shoot A.G.[1] To hold otherwise would make it virtually impossible to obtain a conviction for felonious assault in cases where the firearm used in a shooting was not recovered.

{¶ 13} There was overwhelming, reliable, competent, and credible evidence that Jones had used *a firearm* to shoot A.G. This includes testimony from multiple police officers who heard Jones admit that he shot A.G. as outlined above, as well as Jones himself admitting to police that he was the shooter. This was in addition to J.P.'s eyewitness testimony, wherein J.P. testified that she saw Jones approach A.G., "pull something from his waist band," and shoot "three bullets and one went through [A.G.'s] chest." Therefore, because there was overwhelming, reliable, competent, and credible evidence that Jones had used *a firearm* to shoot A.G., Jones' conviction was supported by sufficient evidence. This holds true despite the fact that the specific identity of the firearm Jones used to shoot A.G. was not conclusively proven beyond a reasonable doubt. Accordingly, finding no merit

---

1. Given the fact that Jones was charged with felonious assault for shooting A.G. with a firearm, there is no dispute that whichever firearm Jones used to shoot A.G. was operable in that it was "capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant." R.C. 2923.11(B)(1).

to any of the arguments raised by Jones herein, Jones' first assignment of error lacks merit.

{¶ 14} Assignment of Error No. 2:

{¶ 15} APPELLANT WAS DENIED HIS RIGHT TO A SPEEDY TRIAL UNDER THE SIXTH AMENDMENT TO THE U.S CONSTITUTION AND OHIO REVISED CODE R.C. 2945.71.

{¶ 16} In his second assignment of error, Jones argues his conviction must be reversed because his right to a speedy trial was violated.  We disagree.

{¶ 17} The right to a speedy trial is guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and by Article I, Section 10, Ohio Constitution.  *State v. Taylor*, 98 Ohio St.3d 27, 2002-Ohio-7017, ¶ 32.  To preserve this right, the Ohio General Assembly enacted the speedy trial statutes found in R.C. 2945.71 through 2945.73.  *State v. Miller*, 12th Dist. Warren No. CA2009-01-008, 2009-Ohio-4831, ¶ 8.  To that end, R.C. 2945.71(C)(2) provides that a person against whom a felony charge is pending "[s]hall be brought to trial within two hundred seventy days after the person's arrest."  However, although the state has 270 days to bring an individual accused of committing a felony to trial, pursuant to R.C. 2945.71(E), "each day during which the accused is held in jail in lieu of bail on the pending charge shall be counted as three days."  Compliance with these statutes is mandatory and must be strictly construed against the state.  *State v. Shearer*, 12th Dist. Butler No. CA2017-07-102, 2018-Ohio-1688, ¶ 57.

{¶ 18} "Upon review of a speedy-trial issue, a court is required to count the days of delay chargeable to either side and determine whether the case was tried within the applicable time limits."  *State v. Sanchez*, 110 Ohio St.3d 274, 2006-Ohio-4478, ¶ 8.  There were 157 days that elapsed between when Jones was arrested on June 2, 2018 and when the jury trial began on November 6, 2018.  However, because Jones was being held in jail

in lieu of bail, the state had 90 days to bring Jones to trial, not 270.  The actual number of days that elapsed between the time Jones was arrested and when the jury trial began is greater than the number of days that the state was required to bring Jones to trial.  *State v. Carpenter*, 12th Dist. Butler No. CA2019-03-044, 2019-Ohio-4829, ¶ 17.  But, as the state correctly points out, there were several tolling events that occurred following Jones' arrest that bring the number of days chargeable to the state back down below the required 90-day time limit.

{¶ 19} These tolling events include, but are not limited to, Jones filing a motion for a continuance, as well as a request for discovery, an application for a bill of particulars, a motion for change of venue, a motion to suppress, and a motion to dismiss.  The speedy trial time was also tolled so that a competency evaluation could be completed in order to determine if Jones was competent to stand trial.  These tolling events, all of which are properly charged against Jones, make it clear that Jones' right to a speedy trial was not violated as he was brought to trial well before the 90-day time limit expired having more than 40 days to left to spare.   This holds true under both Jones' statutory speedy-trial rights and Jones' constitutional right to a speedy trial.  Therefore, because Jones' right to a speedy trial was not violated, Jones' second assignment of error lacks merit and is overruled.

{¶ 20} Judgment affirmed.

M. POWELL, P.J., and RINGLAND, J., concur.