[Cite as *State v. Stewart*, 2025-Ohio-879.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


STATE OF OHIO,                                :

    Appellee,                              :              CASE NO. CA2024-03-045

    - vs -                                       :              O P I N I O N
                                                                 3/17/2025
                                                  :

BILLY GENE STEWART,                     :

    Appellant.                             :


CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR2022-09-1289


Michael T. Gmoser, Butler County Prosecuting Attorney, and John Heinkel, Assistant Prosecuting Attorney, for appellee.

Law Office of John H. Forg, and John H. Forg III, for appellant.


**HENDRICKSON, J.**

{¶ 1}   Appellant, Billy Gene Stewart, appeals from his convictions in the Butler County Court of Common Pleas for various drug-related offenses. For the reasons set forth below, we affirm his convictions.

{¶ 2}   On October 26, 2022, appellant was charged in an eight-count indictment with one count of aggravated trafficking in drugs (methamphetamine) in violation of R.C.

- 1 -

2925.03(A)(2), a felony of the second degree; one count of aggravated possession of drugs (methamphetamine) in violation of R.C. 2925.11(A), a felony of the second degree; one count of trafficking in a fentanyl-related compound in violation of R.C. 2925.03(A)(2), a felony of the third degree; one count of possession of a fentanyl-related compound in violation of R.C. 2925.11(A), a felony of the third degree; one count of possession of cocaine in violation of R.C. 2925.11(A), a felony of the fifth degree; two counts of having weapons while under disability in violation of R.C. 2923.13(A)(2), felonies of the third degree; and one count of the illegal use or possession of drug paraphernalia in violation of R.C. 2925.14(C)(1), a misdemeanor of the fourth degree. The charges arose following a September 14, 2022 traffic stop of a motor vehicle in which appellant was a passenger. Two firearms, methamphetamine, cocaine, fentanyl, digital scales, meth pipes, and a cell phone attributable to appellant were found inside a black bag in the vehicle.

{¶ 3} Appellant pled not guilty to the charges. On May 24, 2023, the state filed a "Notice of Intent to Use 404(B) Evidence," advising that it intended to present evidence recovered from the cell phone seized from the black bag, including photographs and text messages, to prove appellant's identity and the "knowledge" element of the indicted offenses. Appellant did not file a response to the state's notice.

{¶ 4} Eight months later, on January 31, 2024, appellant's jury trial commenced. At the outset, the state's "Notice of Intent to Use 404(B) Evidence" was addressed. The state reiterated its position that the evidence was admissible to prove appellant's identity as the person in possession of the black bag and its content, to prove appellant's ownership of the cell phone found in the same black bag as the contraband, and to prove the "knowledge" element of the indicted offenses. Defense counsel provided a general objection to the evidence, stating "it'd be our position . . . that all of this evidence is more

prejudicial than probative, especially the trafficking messages." Defense counsel argued text messages relating to drug trafficking recovered from the cell phone amounted to improper propensity evidence.

{¶ 5} The trial court entered a preliminary ruling that the evidence would be admissible for the purposes offered by the state. However, the court noted that the evidence, excluding the arresting officers' prior interactions with appellant and information relating to appellant's relationship with his girlfriend, Sheila Jones, would be limited to the seven days immediately prior to appellant's September 14, 2022 arrest. The court stated that if the evidence "strays from the State's stated intended purpose, then we'll revisit that through objection at the time the evidence will be offered."

{¶ 6} The state proceeded to call three witnesses at trial. Two of the witnesses, city of Hamilton police officers, were involved in the traffic stop and subsequent search of the vehicle appellant was traveling in on September 14, 2022. The third witness, a forensic chemist employed by the Ohio Bureau of Criminal Investigation (BCI), analyzed various controlled substances recovered from the black bag inside the stopped vehicle.

{¶ 7} Officers Seth Hillman and Christopher Peters testified that they were on duty together on September 14, 2022 when they observed appellant sitting in the passenger seat of an extended cab truck in Hamilton, Butler County, Ohio. The officers, who were familiar with appellant due to prior interactions, were aware that appellant had an outstanding warrant for his arrest. After the officers observed the truck commit a traffic violation, the officers initiated a stop of the vehicle.

{¶ 8} There were three people in the vehicle:  the driver, appellant in the front passenger seat, and another individual in the back seat of the truck. When the officers initiated the stop, they noticed "lots of movement inside the vehicle on the passenger

side" where appellant was sitting. Officer Hillman testified the movements were "consistent with [appellant] reaching back behind [himself]." Upon approaching the stopped vehicle, the officers learned that the driver also had an outstanding warrant for his arrest. Both appellant and the driver were arrested. As the backseat passenger did not have a valid driver's license, the truck had to be towed.

**{¶ 9}** Appellant was searched upon his arrest. In appellant's wallet, Officer Hillman found a credit card belonging to "Sheila Jones" as well as various dollar bills in denominations ($5's, $10's, and $20's) that Officer Hillman testified where consistent with drug trafficking.[1] When Officer Hillman and Officer Peters inventoried the vehicle, Officer Hillman found in the backseat of the truck, behind the center console, a black bag. Officer Hillman testified that the location of the bag was "consistent with the movement I saw earlier [from appellant], where someone would place something right behind the center console." Inside the black bag, officers found two loaded, operable firearms (a .45-caliber Bersa Thunder handgun and a Smith & Wesson .38-caliber revolver), two digital scales, bent meth pipes, tied off plastic baggies holding an off-white substance, a "black box," and an Android cell phone. The black box held several tied-off baggies of narcotics, including white powdery substances and waxy, white rock-like substances that the officers believed were methamphetamine and crack cocaine, respectively. Photographs of the items found in the black bag were introduced into evidence. However, the photographs did not contain a picture of the cell phone. The officers indicated on cross-examination that despite the cell phone not being pictured in the photographs, an Android

---

1. A photograph of the "Sheila Jones" credit card taken from appellant's wallet was introduced as an exhibit at trial (Exhibit 4). However, when the officers attempted to introduce the physical card as an exhibit (Exhibit 22), they found a credit card belonging to another individual, a "Natasha Cumings," inside the evidence bag. Officer Peters did not know where that credit card came from. He maintained that a credit card with the name "Sheilia Jones" had been taken from appellant's wallet at the time of the traffic stop and that card should have appeared inside the evidence bag as Exhibit 22.

cell phone had been found in the bag.

{¶ 10} While examining the items found in the black bag, the officers noticed the cell phone had received a notification of a communication from Sheila Jones. The officers questioned appellant about Sheila Jones, but he denied knowing anyone by that name. However, Officer Peters knew from a prior interaction with appellant and Sheila Jones that the two were in a romantic relationship with one another.

{¶ 11} The officers obtained a forensic download of the cell phone they had found in the black bag. The cell phone download was admitted into evidence following a joint stipulation by the parties. A Cellebrite report from the cell phone download indicated that between September 11, 2022 and September 14, 2022, the day of appellant's arrest, there had been 263 contacts (calls and text messages) exchanged with Sheila Jones, who also went by Sheila Shines.

{¶ 12} Cellebrite reports from the cell phone download further revealed several Facebook Messenger messages wherein the individual identified himself as "Billy Stewart" and provided a "new" phone number to people.[2] The phone number provided was the number for the phone recovered from the black bag. In addition to the messages sent from the phone, the cell phone download revealed photographs and images relevant to appellant. Namely, selfies of appellant and photographs of his daughter's gravesite.

{¶ 13} The cell phone download also revealed messages and photographs related to the Bersa Thunder handgun and the Smith & Wesson revolver recovered from the black bag. In one of the photographs, a tattooed hand can be seen holding a firearm. Officer Peters testified the tattoo was the same tattoo he observed on appellant's hand.

2. Among the messages he sent identifying himself, appellant sent the following message two days before the traffic stop and his subsequent arrest: "Hey this is Billy Stewart. I was at yr house other night wit [B.S.]. Was interested in the speakers n stuff u have to sale. Gimme a call. * * *."

The images recovered from the cell phone download showed the serial numbers of the firearms. Those serial numbers matched the serial numbers on the two guns recovered from the black bag. The cell phone download also contained messages wherein "Billy Stewart" attempted to sell the firearms.

{¶ 14} Finally, the cell phone download revealed a photograph, taken September 8, 2022, of a bagged crystalized substance. Officer Peters indicated the image was a picture of methamphetamine. The cell phone download also revealed dozens of instant messages and Facebook Messenger messages exchanged between September 8, 2022 and September 14, 2022 (the day of appellant's arrest), wherein "Billy Stewart" arranged the sale of fentanyl and methamphetamine to multiple individuals. Defense counsel did not object to any of the phone records being admitted into evidence or object to any of the individual Facebook or instant messages Officer Peters read aloud to the jury. On cross-examination, defense counsel elicited testimony from Officer Peters that if an individual logged into his Facebook account on a cell phone and never logged out, the account remained logged in on the device, regardless of who was using the account to send messages.

{¶ 15} The BCI forensic chemist was the last individual to testify for the state. The forensic chemist testified she weighed and analyzed the bagged substances found in the black bag. The substances included 2.73 grams of cocaine, 6.81 grams of fentanyl, 32.71 grams of methamphetamine, and a mixture of methamphetamine and fentanyl weighing 1.54 grams.

{¶ 16} Following the forensic chemist's testimony, the trial court admitted all of the state's exhibits without any objection. The court also admitted an additional stipulation from the parties into evidence. Pursuant to this stipulation, appellant admitted he had

previously been convicted of attempted domestic violence in the Butler County Court of Common Pleas and aggravated assault in the Noble County Court of Common Pleas, both felony offenses of violence.

{¶ 17} The state then rested its case-in-chief and appellant moved for acquittal pursuant to Crim.R. 29. His motion was denied. Appellant rested his defense without calling any witnesses, and the jury returned guilty verdicts on all eight counts. Appellant was subsequently sentenced to an aggregate term of 10 to 13 years in prison.

{¶ 18} Appellant appealed his conviction, raising two assignments of error for review.

{¶ 19} Assignment of Error No. 1:

{¶ 20} THE TRIAL COURT ERRED BY PERMITTING THE PROSECUTION TO INTRODUCE EVIDENCE OF OTHER CRIMINAL ACTS PURSUANT TO EVID.R. 404(B)(2).

{¶ 21} In his first assignment of error, appellant argues that the trial court erred by allowing the state to introduce "text messages" downloaded from the cell phone as "other acts" evidence under Evid.R. 404(B)(2).[3] Appellant argues that such evidence was "unfairly prejudicial" and was "actually used to show he engaged in criminal activity and, at the time of his arrest, was acting in accordance with such character."

{¶ 22} As required by Evid.R. 404(B), the state filed a notice of its intent to use other acts evidence at trial, detailing its intent to introduce photographs and text messages recovered from the cell phone to prove appellant's identity and the knowledge

---

3. Throughout his first assignment of error, appellant refers to the instant messages and Facebook messenger messages recovered from the cell phone as "text messages." For consistency and ease of discussion, unless otherwise specified, we will likewise refer to the instant messages and Facebook messenger messages as "text messages."

element of the trafficking, possession, and weapons while under disability offenses. At the start of the trial, the parties and the court discussed the issues raised in the notice, with appellant making a general objection that the evidence was "more prejudicial than probative, especially the trafficking offenses." The court made a preliminary ruling that it would admit the text messages for the purposes offered by the state, but indicated that the evidence would be limited to the seven days immediately prior to appellant's arrest (from September 8, 2022 to September 14, 2022) and that its holding could be "revisit[ed] . . . through objection at the time the evidence [is] offered" if the evidence strayed from its stated intended purpose.

**{¶ 23}** Appellant did not object to any of the text messages being admitted into evidence on Evid.R. 404(B) grounds once trial commenced. The court's ruling with respect to the text messages at the start of trial was liminal. "A liminal ruling 'is a tentative, interlocutory, precautionary ruling by the trial court reflecting its anticipatory treatment of [an] evidentiary issue.'" *State v. Carpenter*, 2019-Ohio-4829, ¶ 34 (12th Dist.), quoting *State v. Grubb*, 28 Ohio St.3d 199, 201-202 (1986). "This initial ruling did not, in and of itself, preserve the record on appeal." *Id.*, citing *Grubb* at 201-202. Rather, to preserve the issue, appellant needed to object to the admissibility of the text messages when they were offered during trial. *See id.*

**{¶ 24}** Generally, where a defendant fails to object to the admissibility of evidence at trial, an appellate court reviews the admission of the evidence for plain error. *Id.* at ¶ 35*; State v. Barahona-Lara*, 2024-Ohio-3048, ¶ 45 (12th Dist.). However, in the present case, the text messages recovered from the cell phone were admitted into evidence

- 8 -

following a joint stipulation by the parties.[4] Appellant and the state jointly stipulated the following with respect to the download of the cell phone, which included the photographs and text messages sent and received by the phone.

> [Joint Stipulation No. 1]: State's Exhibit 21 contains the download for the cellphone in State's Exhibit #20 completed by Carmen Peterson-Gimeson with the Ohio Narcotics Intelligence Center and is a fair, accurate and complete copy of the download and is authenticated and *admissible as evidence* in the above captioned case. (Emphasis added.)

Appellant therefore admitted that the text messages contained on the phone were *admissible* evidence.

**{¶ 25}** "It is well established that '[a]greements, waivers and stipulations made by the accused, or by the accused's counsel in his presence, during the course of a criminal trial are binding and enforceable.'" *State v. Nkoyi*, 2024-Ohio-3144, ¶ 15 (12th Dist.), quoting *State v. Post*, 32 Ohio St.3d 380, 393 (1987). Moreover, "a party may not 'take advantage of an error which he himself invited or induced.'" *State v. Drain*, 2022-Ohio-3697, ¶ 66, quoting *State v. Campbell*, 90 Ohio St.3d 320, 324 (2000). The invited error doctrine does not permit appellant to stipulate to the admission of the evidence obtained from the cell phone download at trial only for him to turn around and argue as part of his appeal that the trial court erred by admitting the recovered text messages into evidence. *See Nkoyi* at ¶ 16; *State v. Harvey*, 2020-Ohio-329, ¶ 55 (3d Dist.).

**{¶ 26}** By stipulating to the admission of the cell phone download, which included the text messages recovered from the phone, and by failing to object to any of the individual text messages offered by the state into evidence, appellant has waived his right

---

4. The stipulation was read into the record on the first day of trial, immediately before Officer Peters' testimony. Officer Peters read through dozens of text messages recovered from the cell phone relating to offers to sell the firearms and to the trafficking and possession of drugs without any objection by appellant.

to challenge the admissibility of the evidence.[5] Appellant's first assignment of error is, therefore, overruled.

{¶ 27} Assignment of Error No. 2:

{¶ 28} THE TRIAL COURT ERRED IN CONVICTING STEWART OF POSSESSION OF ILLEGAL DRUGS AND CONTRABAND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 29} In his second assignment of error, appellant argues his convictions were against the manifest weight of the evidence. Appellant contends that "there is nothing in the record that would indicate that [he], as opposed to [the driver] or [the backseat passenger] was the possessor of the black bag or the items contained therein."

{¶ 30} A manifest weight of the evidence challenge examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 2012-Ohio-2372, ¶ 14 (12th Dist.). To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire trial record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts

---

5. Even if we reviewed the trial court's decision to admit the text messages for plain error, appellant's arguments fail. "Evid.R. 404(B) only applies to limit the admission of so-called 'other acts' evidence that is 'extrinsic' to the crime charged." *State v. Smith*, 2020-Ohio-4008, ¶ 51 (12th Dist.), citing *State v. Stallworth*, 2014-Ohio-4297, ¶ 37 (11th Dist.). In other words, "Evid.R. 404(B) does not apply when the acts are intrinsic as opposed to extrinsic, i.e., the acts are part of the events in question or form part of the immediate background of the alleged acts which forms the basis for the crime charged." *State v. Wainscott*, 2016-Ohio-1153, ¶ 19 (12th Dist.), citing *State v. Crew*, 2010-Ohio-3110, ¶ 99 (2d Dist.). "Thus, 'evidence of other crimes or wrongs may be admitted when such acts are so inextricably intertwined with the crime as charged that proof of one involves the other, explains the circumstances thereof, or tends logically to prove any element of the crime charged.'" *Smith* at ¶ 51, quoting *Wainscott* at ¶ 19. Here, the text messages were intrinsic evidence as the messages were part of the operative facts in the case and related directly to the conduct alleged in the indictment, specifically the cell phone user's trafficking and possession of narcotics and possession of firearms. *See, e.g., State v. Hill*, 2019-Ohio-3432, ¶ 55 (5th Dist.) (finding the trial court did not err in admitting text message evidence as such evidence was "relevant, intrinsic evidence related to the narcotics trafficking and possession"). *See also State v. Carpenter*, 2019-Ohio-4829, ¶ 37-42 (12th Dist.) (finding the trial court did not commit plain error in admitting text messages to prove the defendant knowingly possessed and transported heroin intended for sale, especially where ownership of the heroin was in dispute as a second individual had been riding in the car from which the drugs were seized).

in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Graham*, 2009-Ohio-2814, ¶ 66 (12th Dist.). "While appellate review includes the responsibility to consider the credibility of witnesses and weight given to the evidence, 'these issues are primarily matters for the trier of fact to decide.'" *State v. Barnes*, 2011-Ohio-5226, ¶ 81 (12th Dist.), quoting *State v. Walker*, 2007-Ohio-911, ¶ 26 (12th Dist.). An appellate court, therefore, will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances to correct a manifest injustice when the evidence presented at trial weighs heavily in favor of acquittal. *Id.*, citing *Thompkins*, 78 Ohio St.3d at 387.

{¶ 31} Appellant was convicted of three possession offenses in violation of R.C. 2925.11(A)—possession of methamphetamine, possession of a fentanyl-related compound, and possession of cocaine. To prove these offenses, the state had to demonstrate beyond a reasonable doubt that appellant "knowingly obtain[ed], possess[ed], or use[d] a controlled substance or controlled substance analog," namely the methamphetamine, fentanyl-related compound, and cocaine. R.C. 2925.11(A). A person acts knowingly when, regardless of purpose, "the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B).

{¶ 32} To "possess" means "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K). Possession may be actual or constructive. *State v. Lee*, 2021-Ohio-2544, ¶ 21 (12th Dist.). "Constructive possession exists when one is conscious of the presence of the

object and able to exercise dominion and control over it, even if it is not within one's immediate physical possession." *Id.*, citing *State v. Graves*, 2015-Ohio-3936, ¶ 22 (12th Dist.). "Constructive possession may be proven by circumstantial evidence alone." *State v. Fultz*, 2016-Ohio-1486, ¶ 12 (12th Dist.). "Absent a defendant's admission, the surrounding facts and circumstances, including the defendant's actions, are evidence that the trier of fact can consider in determining whether the defendant had constructive possession." *Id.* "The discovery of readily accessible drugs in close proximity to the accused constitutes circumstantial evidence that the accused was in constructive possession of the drugs." *Id.* at ¶ 13.

{¶ 33} Appellant was also convicted of two counts of trafficking in drugs in violation of R.C. 2925.03(A)(2)—methamphetamine and a fentanyl-related compound. To prove these offenses, the state had to demonstrate that appellant "knowingly . . . [p]repare[d] for shipment, ship[ped], transport[ed], deliver[ed], prepare[d] for distribution, or distribute[d] a controlled substance or controlled substance analog, when the offender [knew] or ha[d] reasonable cause to believe that the controlled substance or a controlled substance analog [was] intended for sale or resale by the offender or another person." R.C. 2925.03(A)(2).

{¶ 34} To prove the illegal use or possession of drug paraphernalia charge, the state had to demonstrate that appellant "knowingly use[d], or possess[ed] with purpose to use, drug paraphernalia." R.C. 2925.14(C)(1). "Drug paraphernalia" includes "any equipment, product, or material of any kind that is used by the offender, intended by the offender for use, or designed for use, in propagating . . . processing, preparing, testing, analyzing, packaging, repackaging, storing, containing, concealing, injecting, ingesting, inhaling, or otherwise into the human body, a controlled substance." R.C. 2925.14(A).

Drug paraphernalia includes "[a] scale or balance for weighing or measuring a controlled substance." R.C. 2925.14(A)(6).

**{¶ 35}** Finally, appellant was convicted of two counts of having weapons while under disability in violation of R.C. 2923.13(A)(2), with one count being related to the .45-caliber Bersa Thunder handgun and the other being related to the Smith & Wesson .38-caliber revolver. Pursuant to R.C. 2923.13(A)(2), it is illegal for any person to "knowingly acquire, have, carry, or use any firearm or dangerous ordinance, if . . . [t]he person is under indictment for or has been convicted of any felony offense of violence."

**{¶ 36}** Having thoroughly reviewed the record in the present case, we find that appellant's convictions for trafficking, possession, possession of drug paraphernalia, and having weapons while under disability are not against the manifest weight of the evidence. Contrary to appellant's arguments, the weight of the evidence, and all reasonable inferences taken therefrom, demonstrates that the black bag found in the backseat of stopped vehicle and all the items contained therein belonged to appellant.

**{¶ 37}** At the time of the traffic stop, Officers Hillman and Peters observed appellant making furtive movements, reaching behind where he was sitting in the front passenger seat. The officers then found a black bag in the backseat. According to Officer Hillman, the location of the bag was "consistent with the movement that I saw earlier [from appellant], where someone would place something right behind the center console."

**{¶ 38}** Appellant was arrested and searched. As indicated by Officer Hillman, inside appellant's wallet they found currency in denominations commonly used by drug traffickers as well as a credit card belonging to "Sheila Jones." Officer Peters knew Jones to be appellant's girlfriend. Inside the black bag, the officers found two loaded and operable weapons, a .45 Bersa Thunder handgun and a Smith & Wesson .38-caliber

revolver, two digital scales with residue on them, bent meth pipes, tied off plastic baggies, an Android cell phone, and a black box that held several additional tied off baggies of narcotics. The substances found in the baggies were tested by BCI and found to consist of 2.73 grams of cocaine, 6.81 grams of fentanyl, 32.71 grams of methamphetamine, and 1.54 grams of a mixture of methamphetamine and fentanyl.

{¶ 39} Evidence obtained from the cell phone demonstrated appellant possessed the contraband weapons and narcotics found in the black bag. From September 11, 2022 to September 14, 2022, more than 263 contacts were exchanged between Sheila Jones and the cell phone, which is indicative of a close relationship between Jones and the cell phone user. Officer Peters testified Jones and appellant were in a romantic relationship. Additionally, the cell phone user had identified himself as "Billy Stewart" numerous times when sending messages from the phone. Selfies of appellant and other photographs and images relevant to appellant, i.e., photographs of his daughter's gravesite, were also recovered from the phone. Given this evidence, the jury was entitled to find that the phone belonged to appellant and not to another individual.

{¶ 40} The phone contained images and messages relevant to appellant's drug possession, trafficking, and weapons charges. With respect to the having weapons while under disability charges, appellant took photographs of the Bersa Thunder handgun and Smith & Wesson Revolver he was trying to sell. In one of those photographs, a tattoo of the hand holding the gun is visible. Officer Peters testified he observed the same tattoo on appellant's hand. Messages from "Billy Stewart" seeking to sell the firearms were sent from the phone. The photographs and messages, in combination with appellant's stipulation that he had previously been convicted of felony offenses of violence, were evidence beyond a reasonable doubt that appellant was guilty of having weapons while

under disability. His convictions for having weapons while under disability are, therefore, not against the manifest weight of the evidence.

{¶ 41} Methamphetamine, cocaine, and fentanyl baggies, as well as the digital scales and meth pipes, were found in the same bag as the cell phone. Messages recovered from the cell phone show that "Billy Stewart" sent instant messages and Facebook Messenger messages in which he agreed to sell the narcotics. As numerous courts have recognized, "plastic baggies, digital scales, and large sums of money are often used in drug trafficking which constitute circumstantial evidence that appellant was using these items to commit that crime." *State v. Harry*, 2008-Ohio-6380, ¶ 50 (12th Dist.); *State v. Mickey*, 2020-Ohio-1432, ¶ 34 (12th Dist.). *See also State v. Howard*, 2022-Ohio-1609, ¶ 30 (2d Dist.); *State v. Delaney*, 2018-Ohio-727, ¶ 11 (9th Dist.); *State v. Rutledge*, 2013-Ohio-1482, ¶ 15 (6th Dist.); *State v. Floyd*, 2008-Ohio-5262, ¶ 16 (8th Dist.); *State v. Williams*, 2005-Ohio-6772, ¶ 19 (1st Dist.). "Of course, a person must possess a substance to traffic it." *State v. Jones*, 2024-Ohio-5501 ¶ 65 (1st Dist.), citing *State v. Stribling*, 2008-Ohio-4577, ¶ 33 (8th Dist.) ("the commission of drug trafficking necessarily resulted in drug possession because one must possess—that is, have control over—the substance in order to ship it, deliver it, distribute it or prepare it").

{¶ 42} Given the evidence recovered from the black bag found during the traffic stop, and the cell phone evidence tying appellant to the contents of that black bag, we find that appellant's convictions for possession of methamphetamine, possession of a fentanyl-related compound, possession of cocaine, trafficking in methamphetamine, trafficking in a fentanyl-related compound, and the illegal use or possession of drug paraphernalia are not against the manifest weight of the evidence.

{¶ 43} Appellant's arguments that the items recovered from the black bag could

belong to one of the other occupants of the vehicle and that the messages sent from the cell phone could have been sent by someone else who used his Facebook account were considered and rejected by the jury. As this court has repeatedly recognized, a conviction is not against the manifest weight of the evidence simply because the jury believed the state's witnesses and did not find the version of events presented by the defendant credible. *State v. Madden*, 2024-Ohio-2851, ¶ 45 (12th Dist.); *State v. Wallace*, 2023-Ohio-1524, ¶ 24 (12th Dist.).

{¶ 44} Accordingly, for the reasons stated above, we find that appellant's convictions are not against the manifest weight of the evidence. Appellant's second assignment of error is overruled.

{¶ 45} Judgment affirmed.


PIPER, J., concurs.

BYRNE, P.J., concurs separately.


**BYRNE, P.J., concurring.**

{¶ 46} The court's opinion correctly notes in ¶ 9 that Officer Hillman testified that he found various bills in $5, $10, and $20 denominations in Stewart's wallet, and further testified that such denominations are consistent with drug trafficking. The opinion again references this testimony in ¶ 38, in the middle of its analysis of the manifest weight of the evidence under Assignment of Error No. 2. A reader could perceive the court as relying on this testimony as part of its manifest weight analysis. In joining the court's opinion, I do so with the understanding that the opinion's reference to Officer Hillman's testimony about cash denominations is only in the nature of summarizing the testimony at trial, and does not in any way approve or rely on that testimony in reaching the court's

overall conclusion regarding manifest weight. In my view, Officer Hillman's testimony that bills in $5, $10, and $20 denominations are consistent with drug trafficking provides no support whatsoever for Stewart's conviction. Such denominations are not inherently suspicious, and common experience tells us that cash in those denominations is routinely carried by virtually everyone, not just drug dealers. If Officer Hillman had testified that cash in such denominations was found in Stewart's possession in large quantities—such as large stacks of $5, $10, and $20 bills—and that such large quantities of cash are consistent with drug trafficking, I might agree with relying on such testimony. But that is not what Officer Hillman testified, and in fact the photo (entered into evidence) showing the cash reveals nothing more than a relatively small quantity of cash that any person might be expected to have in their wallet.