OPINION
{¶ 1} Defendant-appellant, Thomas Cox, appeals his conviction in the Clermont County Court of Common Pleas on one second-degree felony count of illegal assembly or possession of chemicals for the manufacture of drugs, in violation of R.C. 2925.041(A), one third-degree felony count of conspiracy to commit illegal manufacture of drugs, in violation of R.C. 2923.01(A)(2) and R.C. 2925.04(A), and one fifth-degree felony count of aggravated *Page 2 
possession of drugs, in violation of R.C. 2925.11(A). For the reasons set forth below, we affirm appellant's conviction.
 {¶ 2} On the afternoon of April 13, 2007, appellant drove four companions, Benjamin Pendleton, Deborah Keeton, Kenneth Barber, and Ashley Hensley, to a number of pharmacies in Clermont County. During their excursion, the group stopped at a Bigg's store in Eastgate, at which time Pendleton and Keeton entered the store and purchased pseudoephedrine products. A store employee, Melanie Murphy, became suspicious of the two patrons' purchases because pseudoephedrine products can be used to manufacture methamphetamine. Murphy therefore contacted another store in the area and learned that the same individuals had been there earlier and had purchased pseudoephedrine products. As a result, Murphy contacted the Union Township Police Department and reported the matter.
 {¶ 3} The group later traveled to a local Kroger store, where Barber and Pendleton, accompanied by his 16-year-old girlfriend, Hensley, entered the store and purchased pseudoephedrine products. While the three were in the store, Union Township Police Officer Joshua Bail arrived at the scene and observed appellant and Keeton sitting in a vehicle that matched the description Murphy had provided. Officer Bail observed appellant wearing a toboggan, a red wig, and sunglasses. Suspecting that other individuals associated with appellant may have been shopping in the pharmacy, Officer Bail called for back-up and instructed appellant and Keeton to remain in the car. Appellant identified himself as "Eddie Vest," and provided a social security number matching that name.
 {¶ 4} When back-up arrived, a search of appellant's vehicle was performed, during which Officer Bail and Officer Jeremy Grooms discovered a cigarette pack with two Valium tablets, and a plastic shopping bag containing 60 unpackaged tablets of pseudoephedrine medication. The bag was found in the center console next to appellant's seat. The officers *Page 3 
also discovered $190 in cash in appellant's pocket, along with a pen-like device called a "snorter" used to ingest methamphetamine.
 {¶ 5} Hensley and Pendleton exited the store as the officers were speaking with appellant. Pendleton was carrying a Kroger bag containing pseudoephedrine medication and a receipt indicating that he had just purchased the same inside the store. Barber, who had also purchased pseudoephedrine at the store, escaped apprehension at that time.
 {¶ 6} On May 2, 2007, appellant was indicted on the following charges: one second-degree felony count of illegal assembly or possession of chemicals for the manufacture of drugs, in violation of R.C. 2925.041(A); one second-degree felony count of conspiracy, in violation of R.C. 2923.01(A)(2); and one fifth-degree felony count of aggravated possession of drugs, in violation of R.C. 2925.11(A).
 {¶ 7} Appellant filed a motion to dismiss the charges on August 2, 2007, alleging a violation of his speedy-trial rights. On October 3, 2007, the trial court conducted a hearing on appellant's motion, overruled such motion, and convened a jury trial, which resulted in a mistrial. The matter proceeded to trial again on October 16, 2007, at the conclusion of which the jury found appellant guilty of all charges. Appellant was subsequently sentenced to four years in prison on count one, four years in prison on count two, to be served consecutively to count one, and one year in prison on count three, to be served concurrently with counts one and two, for an aggregate of eight years in prison.
 {¶ 8} Appellant now appeals his conviction, advancing five assignments of error. Appellant's assignments of error shall be addressed out of order to facilitate our review.
 {¶ 9} Assignment of Error No. 1:
 {¶ 10} "THE TRIAL [COURT] ERRED AS A MATTER OF LAW BY OVERRULING APPELLANT'S MOTION TO DISMISS ON SPEEDY TRIAL GROUNDS."
 {¶ 11} In his first assignment of error, appellant argues the trial court erred in denying *Page 4 
his motion to dismiss where he was not brought to trial within 90 days of his original arrest for the offenses in question. We find appellant's argument without merit.
 {¶ 12} Both the United States and Ohio Constitutions guarantee a criminal defendant the right to a speedy trial.State v. Davenport, Butler App. No. CA2005-01-005,2005-Ohio-6686, ¶ 7, citing State v. Baker, 78 Ohio St.3d 108,110, 1997-Ohio-229. Additionally, Ohio's statutory scheme provides specific time requirements within which the state must bring an accused to trial. See R.C. 2945.71 — 2945.73. The Ohio speedy-trial statute is mandatory and must be strictly construed against the state. State v. Sandera, Brown App. No. CA2007-09-016,2008-Ohio-6378, ¶ 4.
 {¶ 13} Pursuant to R.C. 2945.71(C)(2), a person against whom a felony charge is pending must be brought to trial within 270 days from the date of his arrest, not including the date of his arrest.Davenport at ¶ 7; Sandera at ¶ 5. R.C. 2945.71(E), known as the "triple count provision," provides that when an accused is held in jail in lieu of bail on the pending charge, each day shall be counted as three days. Davenport; Sandera. In effect, this provision creates a 90-day speedy-trial timetable where an accused is held in jail on the pending charge. Davenport.
 {¶ 14} Once a defendant demonstrates he was not brought to trial within the required time period, the accused presents a prima facie case for release. State v. Masters, 172 Ohio App.3d 666,2007-Ohio-4229, ¶ 10. The burden then shifts to the state to demonstrate that sufficient time was tolled or extended under the statute. Id., citing State v. Butcher (1986), 27 Ohio St.3d 28,31. A defendant's right to a speedy trial may be waived, provided such waiver is either expressed in writing or made in open court on the record. State v. King, 70 Ohio St.3d 158, 1994-Ohio-412, syllabus.
 {¶ 15} Appellate review of speedy-trial issues involves a mixed question of law and fact. Davenport, 2005-Ohio-6686
at ¶ 8, citing State v. High, 143 Ohio App.3d 232, 242, *Page 5 2001-Ohio-3530. A reviewing court must accord deference to the trial court's findings of fact if they are supported by competent, credible evidence, but will independently review whether the trial court correctly applied the law to the facts of the case. Id., citing High.
 {¶ 16} In this case, appellant contends the trial court erred in denying his motion to dismiss because he was not brought to trial within 90 days of his original arrest on April 13, 2007. According to appellant, the original felony complaint under which he was charged for the offenses in question was dismissed ten days following his arrest, and he was in jail for the duration of such time period. He was then indicted on May 2, 2007 on the same offenses, and brought to trial for the first time on August 9, 2007. Appellant argues his trial date was beyond the mandatory 90-day time period from the date of his arrest, such that the trial court erred in denying his motion to dismiss on speedy-trial grounds.
 {¶ 17} As an initial matter, we note that the record is devoid of any documentary evidence concerning appellant's original arrest and the original felony complaint. There is also no indication in the record as to the length of time appellant was incarcerated following his arrest, or whether he was released from jail following the dismissal of the complaint. We further note that appellant has failed to provide this court with a transcript of the hearing held on October 3, 2007, during which the trial court denied his motion to dismiss. "In the absence of a complete and adequate record necessary for the resolution of an assignment of error, the reviewing court must presume the regularity of the trial court proceedings and the presence of sufficient evidence to support the trial court's decision." State v. Kelly (2001),145 Ohio App.3d 277, 283, citing State v. Nichols (1997), 122 Ohio App.3d 631,634.
 {¶ 18} Moreover, our review of the record provided on appeal demonstrates the trial court did not err in denying appellant's motion to dismiss. The record indicates that the indictment in this case was filed on May 2, 2007, and that appellant was served with the indictment on June 5, 2007. The record further indicates that appellant was committed to jail *Page 6 
on June 5, 2007. Accordingly, speedy-trial time under the triple count provision of the statute began to run on June 5, 2007.State v. Riley, 162 Ohio App.3d 730, 2005-Ohio-4337, ¶ 20.
 {¶ 19} The record indicates that on June 12 and 15, 2007, the trial court granted continuances upon the agreement of both parties, though appellant did not waive his speedy-trial rights at that time. Ohio courts have previously held that "reasonable continuances agreed to by counsel, even over the defendant's objection, * * * toll the speedy trial clock." State v.Miller, Franklin App. No. 04AP-285, 2005-Ohio-518, ¶ 9. This is true, "even in the absence of an explicit waiver of the accused's right to a speedy trial." State v. Huston, Wyandot App. Nos. 16-05-23, 16-05-24, 2006-Ohio-6857, ¶ 18. Accordingly, 21 days of speedy-trial time elapsed from June 5, 2007 to June 12, 2007, at which point speedy-trial time was tolled. See id.
 {¶ 20} The record indicates that appellant thereafter filed his motion to dismiss on August 2, 2007. "[A] motion to dismiss acts to toll the time in which a defendant must be brought to trial," and "the time that elapse[s] while the motion [is] pending is not included for purposes of R.C. 2945.71." State v. Bickerstaff
(1984), 10 Ohio St.3d 62, 67. As previously stated, the trial court conducted a hearing on appellant's motion, and issued its findings on the record at the conclusion of the hearing, on October 3, 2007. The matter then proceeded to a jury trial the same day. Accordingly, our review of the record demonstrates that appellant was brought to trial for the first time well within the requisite 90-day speedy-trial time period.[1]
 {¶ 21} Based upon the foregoing, we find that appellant has failed to demonstrate the trial court erred in denying his motion to dismiss on speedy-trial grounds. Accordingly, *Page 7 
appellant's first assignment of error is without merit and is hereby overruled.
 {¶ 22} Assignment of Error No. 5:
 {¶ 23} "THE EVIDENCE WAS INSUFFICIENT AS A MATTER OF LAW AND/OR AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE TO SUSTAIN APPELLANT'S CONVICTIONS FOR ILLEGAL POSSESSION OF CHEMICALS FOR THE MANUFACTURE OF DRUGS AND CONSPIRACY."
 {¶ 24} In his fifth assignment of error, appellant argues his convictions for illegal possession of chemicals for the manufacture of drugs and conspiracy are not supported by sufficient evidence and are against the manifest weight of the evidence. We find appellant's arguments without merit.
 {¶ 25} In reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would support a conviction. State v. Lucas, Tuscarawas App. No 2005AP090063, 2006-Ohio-1675, ¶ 8; State v. Thompkins,78 Ohio St.3d 380, 386, 1997-Ohio-52. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'"State v. Haney, Clermont App. No. CA2005-07-068, 2006-Ohio-3899, ¶ 14, quoting State v. Tenace,109 Ohio St.3d 255, 2006-Ohio-2417, ¶ 37.
 {¶ 26} While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge "concerns the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other."Thompkins at 387. In determining whether a conviction is against the manifest weight of the evidence, "[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a *Page 8 
manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to overturn a conviction based on the manifest weight of the evidence is to be invoked only in those extraordinary circumstances to correct a manifest miscarriage of justice where the evidence presented weighs heavily in favor of acquittal." Id.
 {¶ 27} "`Because sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency. Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency.'" State v. Lombardi, Summit App. No. 22435,2005-Ohio-4942, ¶ 9, quoting State v. Roberts (Sept. 17, 1997), Lorain App. No. 96CA006462, 1997 WL 600669, at *2. Because our resolution of appellant's claim that his convictions are against the weight of the evidence is dispositive in this case, we will address such argument first.
 {¶ 28} Appellant first contends his conviction for illegal possession of chemicals for the manufacture of drugs is against the manifest weight of the evidence where no evidence was presented at trial demonstrating that he possessed pseudoephedrine or had the requisite intent to manufacture methamphetamine. R.C. 2925.041(A) provides that "[n]o person shall knowingly assemble or possess one or more chemicals that may be used to manufacture a controlled substance in schedule I or II with the intent to manufacture a controlled substance in schedule I or II in violation of [R.C] 2925.04." "A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).
 {¶ 29} Possession is defined as "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K). Possession may be actual or constructive. State v. Gragg,173 Ohio App.3d 270, 2007-Ohio-4731, ¶ 19; State v. Hankerson
(1982), 70 Ohio St.2d 87, 91. A person has constructive *Page 9 
possession of an item when he is conscious of the presence of the object and able to exercise dominion and control over such item, even if it is not within his immediate physical possession.Gragg; Hankerson.
 {¶ 30} Further, "[w]ith regard to the ability to prove an offender's intentions, the Ohio Supreme Court has recognized that `intent, lying as it does within the privacy of a person's own thoughts, is not susceptible [to] objective proof.'" State v.Wilson, Warren App. No. CA2006-01-007, 2007-Ohio-2298, ¶ 41, quoting State v. Garner, 74 Ohio St.3d 49, 60, 1995-Ohio-168. Accordingly, "[i]ntent must often * * * be inferred from the act itself and the surrounding circumstances, including the acts and statements of the defendant surrounding the time of the offense." Id.; State v. Hutchinson (1999), 135 Ohio App.3d 459, 457.
 {¶ 31} In this case, the state presented the testimony of Officer Bail, who indicated that he searched both appellant's person and the vehicle appellant was operating on the date in question. Officer Bail indicated that he discovered $190 in cash in appellant's pocket, as well as a pen-like device called a "snorter" used to ingest methamphetamine. Officer Bail testified that the "snorter" tested positive for methamphetamine. With respect to his search of the vehicle, Officer Bail testified that he discovered a plastic bag containing pseudoephedrine pills in the center of the vehicle between the driver's and passenger's seats. Officer Bail indicated that additional pseudoephedrine pills were found in the Kroger bag Pendleton carried out of the store.
 {¶ 32} Appellant's companions also testified at trial concerning their involvement in the purchase of pseudoephedrine on the date in question. First, Kenneth Barber testified that the night before the incident in this case, he asked appellant for a ride to traffic court the following morning, to which appellant agreed. The following day, appellant drove Barber to court, then asked Barber if he would purchase three boxes of pseudoephedrine pills for him in exchange for the ride. Barber testified that appellant picked up Pendleton, Hensley, and *Page 10 
Keeton that day, and that the group proceeded to travel to a number of pharmacies in Clermont County. Barber indicated that he purchased pseudoephedrine pills at three such locations, including the Kroger store where appellant was apprehended, and that he provided appellant with a total of two boxes of pseudoephedrine pills on the date in question.
 {¶ 33} Benjamin Pendleton also testified at trial that appellant asked him to purchase pseudoephedrine pills in exchange for $50 per box. He indicated that a box costs approximately $4 to $5. Pendleton testified that appellant drove him, along with Hensley, Keeton, and Barber, to a number of pharmacies on the date of the incident, and that he purchased three boxes of pseudoephedrine for appellant. Pendleton indicated that upon receiving the pills, appellant removed the pills from the packaging, placed them in a plastic bag, and disposed of the boxes and packaging.
 {¶ 34} Ashley Hensley testified that she, too, accompanied appellant to a number of pharmacies on the date in question, and that she was 16 years old at the time. Hensley testified that she has used methamphetamine for several years and that appellant has provided her with methamphetamine in the past. Hensley also testified that she, Pendleton, Barber, and appellant used methamphetamine on the date of the incident prior to traveling to the pharmacies to purchase pseudoephedrine.
 {¶ 35} Finally, Deborah Keeton testified as to her involvement in the incident. She indicated that she has previously purchased pseudoephedrine with appellant on approximately 20 occasions, and that the purpose of purchasing pseudoephedrine was to manufacture methamphetamine. Keeton testified that on the date in question, she purchased one box of pseudoephedrine for appellant, and that the purpose of collecting the pseudoephedrine that day was to manufacture methamphetamine.
 {¶ 36} Based upon the foregoing evidence, and after a thorough review of the record in this case, we cannot conclude the jury clearly lost its way or created a manifest *Page 11 
miscarriage of justice in finding appellant guilty of illegal possession of chemicals for the manufacture of drugs. As an initial matter, the testimony of Officer Bail supports the jury's conclusion that appellant "possessed" pseudoephedrine pills, as the pills were discovered within appellant's immediate reach in the vehicle he was operating. Moreover, Barber, Pendleton, and Keeton all indicated that they purchased the pills on the date in question, then gave the pills to appellant. The jury, as the trier or fact, was permitted to determine the credibility of the witnesses and make its determination accordingly. See State v. Walker, Butler App. No. CA2006-04-085, 2007-Ohio-911, ¶ 26, citing State v. DeHass
(1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 37} Moreover, the evidence presented at trial supports the jury's conclusion that appellant possessed the requisite intent to manufacture methamphetamine. The evidence demonstrates that appellant drove his companions to a number of pharmacies to purchase pseudoephedrine, and that appellant's companions purchased several boxes of pseudoephedrine at his request. The evidence indicates that upon receiving the pills from his companions, appellant removed the pills form their packaging and placed them in a plastic bag. Significantly, Keeton testified that she and appellant had purchased pseudoephedrine on multiple previous occasions for the purpose of manufacturing methamphetamine. As stated, the jury was permitted to determine the weight and credibility of the evidence presented at trial in determining whether appellant intended to manufacture methamphetamine.
 {¶ 38} Appellant also argues that his conviction for conspiracy to commit illegal manufacture of drugs is against the manifest weight of the evidence. Pursuant to R.C. 2923.01(A)(2), "[n]o person, with purpose to commit or to promote or facilitate the commission of * * * a felony drug trafficking, manufacturing, processing, or possession offense, shall * * * [a]gree with another person or persons that one or more of them will *Page 12 
engage in conduct that facilitates the commission of any of the specified offenses." The statute further provides that "[n]o person shall be convicted of conspiracy unless a substantial overt act in furtherance of the conspiracy is alleged and proved to have been done by the accused or a person with whom the accused conspired, subsequent to the accused's entrance into the conspiracy. For purposes of this section, an overt act is substantial when it is of a character that manifests a purpose on the part of the actor that the object of the conspiracy should be completed." R.C. 2923.01(B). Relevant to this case, R.C. 2925.04 provides that "[n]o person shall * * * knowingly manufacture or otherwise engage in any part of the production of a controlled substance."
 {¶ 39} The state alleged that appellant conspired with his companions to purchase pseudoephedrine to be used in the manufacture of methamphetamine. The state further alleged that appellant committed a substantial overt act in furtherance of the conspiracy by providing transportation to his companions for the purpose of purchasing pseudoephedrine. Appellant, however, argues the state failed to prove that providing transportation facilitated the manufacture of methamphetamine because there was no evidence demonstrating that appellant, himself, was going to manufacture methamphetamine. We find the evidence presented at trial supports the jury's conclusion that appellant conspired with others to facilitate the manufacture of methamphetamine.
 {¶ 40} As stated, the state presented evidence that appellant asked Barber, Pendleton, and Keeton to purchase pseudoephedrine products for him on the date in question, and provided these individuals with transportation to a number of pharmacies in the area to do so. Such individuals testified that they knew pseudoephedrine was used to manufacture methamphetamine, and Keeton specifically testified that she and appellant had purchased pseudoephedrine on previous occasions for the purpose of manufacturing methamphetamine. Agent Marc Anthony Sorbello also testified that pseudoephedrine is a *Page 13 
primary precursor in the manufacture of methamphetamine and that the quantity of pseudoephedrine discovered in this case would yield 7.68 grams of methamphetamine, which is greater than the bulk amount of the substance. The pills in question were discovered unpackaged in a plastic bag within appellant's immediate reach in the vehicle. Based upon such evidence, we cannot find the jury clearly lost its way in finding appellant guilty of conspiracy to commit illegal manufacture of drugs.
 {¶ 41} After a thorough review of the record, we find that appellant's convictions for illegal possession of chemicals for the manufacture of drugs and conspiracy to commit illegal manufacture of drugs are not against the manifest weight of the evidence, and are supported by sufficient evidence. Appellant's fifth assignment of error is therefore overruled.
 {¶ 42} Assignment of Error No. 3:
 {¶ 43} "THE TRIAL COURT ERRED AS A MATTER OF LAW BY PERMITTING LAY OPINION TESTIMONY IN VIOLATION OF EVIDENCE RULE 701."
 {¶ 44} In his third assignment of error, appellant argues the trial court erred in permitting Agent Sorbello and Keeton to testify as to the manufacture of methamphetamine without such witnesses being qualified as expert witnesses. The record demonstrates, however, that appellant failed to object at trial to the admission of such testimony.
 {¶ 45} It is well-established that errors arising during trial that are not brought to the attention of the trial court are ordinarily waived and may not be raised on appeal unless plain error is demonstrated. Gragg, 2007-Ohio-4731 at ¶ 39; State v.McKee, 91 Ohio St.3d 292, 294, 2001-Ohio-41; State v.Rigdon, Warren App. No. CA2006-05-064, 2007-Ohio-2843, ¶ 13. An alleged error does not constitute plain error unless, but for the error, the outcome of the trial clearly would have been otherwise.Gragg; McKee; Crim. R. 52(B). Further, plain error applies only to prevent a manifest miscarriage of justice. Gragg.
 {¶ 46} In this case, our review of the record has yielded no indication that the trial *Page 14 
court committed plain error in admitting the testimony of Agent Sorbello and Keeton. As an initial matter, the record demonstrates that Agent Sorbello testified as to his education, training, and experience in the field of identifying methamphetamine, including the production of methamphetamine. Agent Sorbello testified that he has completed 282 hours of special courses pertaining to the investigation, dismantling, and supervision of "clandestine drug laboratory operations," and has been involved in 500 cases involving methamphetamine. Ohio courts have previously held that "the experience and knowledge of a * * * lay witness can establish his * * * competence to express an opinion on the identity of a controlled substance if a foundation for this testimony is first established."McKee at syllabus; Gragg at ¶ 40-41. Accordingly, Agent Sorbello's testimony as to his education, training, and experience qualified him to testify in this case as to the production process of methamphetamine, including the quantity of methamphetamine that could be produced utilizing the pseudoephedrine discovered in appellant's possession.
 {¶ 47} In addition, our review of the record demonstrates that Keeton's testimony was offered to prove the existence of the conspiracy in this case, rather than to educate the jury on the production process of methamphetamine. Keeton testified as to her extensive history of methamphetamine use, as well as previous occasions on which she purchased pseudoephedrine with appellant for the purpose of manufacturing methamphetamine. She further testified that on the date of the incident in this case, she purchased pseudoephedrine for appellant, and that the purpose of doing so was to manufacture methamphetamine.
 {¶ 48} Based upon the foregoing, we find appellant has failed to demonstrate the trial court committed plain error in admitting the testimony of Agent Sorbello and Keeton. Appellant's third assignment of error is therefore overruled.
 {¶ 49} Assignment of Error No. 4:
 {¶ 50} "THE TRIAL COURT ERRED AS A MATTER OF LAW BY PERMITTING *Page 15 
OTHER ACTS TESTIMONY INTO EVIDENCE THUS PREJUDICING APPELLANT'S RIGHT TO A FAIR TRIAL."
 {¶ 51} In his fourth assignment of error, appellant argues the trial court erred in permitting Keeton to testify as to previous occasions on which she and appellant had purchased pseudoephedrine. Like appellant's previous argument, we review appellant's contention as to this matter for plain error, as appellant failed to object to Keeton's testimony at trial. Gragg, 2007-Ohio-4731 at ¶ 39;McKee, 91 Ohio St.3d at 294.
 {¶ 52} Evid. R. 404(B) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." This rule is in accord with R.C. 2945.59, which provides that "[i]n any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant."
 {¶ 53} In this case, we find appellant has failed to demonstrate the trial court committed plain error in admitting Keeton's testimony that she had purchased pseudoephedrine with appellant on multiple previous occasions. Part of appellant's defense at trial was that the state could not prove he intended to manufacture methamphetamine with the pseudoephedrine pills he and his companions collected on the date in question. Our review of the record demonstrates that Keeton's testimony was presented to establish appellant's intent, plan, and knowledge with respect to collecting the pseudoephedrine pills. *Page 16 
Accordingly, we find Keeton's testimony was properly admitted pursuant to Evid. R. 404(B).
 {¶ 54} Based upon the foregoing, we find appellant's fourth assignment of error is without merit and overrule the same accordingly.
 {¶ 55} Assignment of Error No. 2:
 {¶ 56} "APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF HIS CONSTITUTIONAL RIGHTS THUS PREJUDICING HIS RIGHT TO A FAIR TRIAL."
 {¶ 57} Finally, appellant argues his trial counsel was ineffective in failing to "properly prosecute" appellant's motion to dismiss on speedy trial grounds, and failing to object to the trial testimony Agent Sorbello, Keeton, and Hensley. We find appellant's arguments without merit.
 {¶ 58} In reviewing a claim of ineffective assistance of counsel, this court must determine: (1) whether counsel's performance fell below an objective standard of reasonable professional competence, and (2) if so, whether there is a reasonable probability that counsel's unprofessional errors prejudiced appellant such that he was deprived a fair trial.Strickland v. Washington (1984), 466 U.S. 668, 690-91,104 S.Ct. 2052. See, also, State v. Bradley (1989),42 Ohio St.3d 136, paragraph two of the syllabus.
 {¶ 59} To demonstrate an error in counsel's actions, appellant must overcome the strong presumption that licensed attorneys are competent, and that the challenged action is the product of sound trial strategy and falls within the wide range of reasonable professional assistance. Strickland,466 U.S. at 690-91. To demonstrate resulting prejudice, appellant must establish a reasonable probability that, but for counsel's unprofessional conduct, the result of the proceedings would have been different. Id. Appellant must demonstrate that, due to his attorney's ineffectiveness, his trial was so demonstrably unfair that there is a reasonable probability the result would have been different absent his attorney's deficient *Page 17 
performance. Id. at 693.
 {¶ 60} Appellant first argues his trial counsel was ineffective because he was not prepared to argue appellant's motion to dismiss when the matter was originally set for a hearing, and therefore, the trial court "did not really address the issue until the [m]otion was renewed * * * at the sentencing hearing." We find this contention without merit. While the record demonstrates that counsel informed the court that he was not ready to proceed on the motion to dismiss during the August 2, 2007 hearing on the matter, the record demonstrates that counsel renewed the motion and argued the same prior to trial on October 3, 2007. The record demonstrates that the trial court overruled appellant's motion at that time, and that the matter then proceeded to trial. Accordingly, appellant's contention that the trial court did not address his motion until sentencing is unsupported by the record in this case.
 {¶ 61} Appellant also argues his trial counsel was ineffective in failing to object to Agent Sorbello's testimony concerning the manufacture of methamphetamine. Appellant contends such testimony lacked foundation and that Agent Sorbello was not qualified as an expert. We find appellant has failed to demonstrate counsel was deficient in this regard.
 {¶ 62} As previously discussed, the record demonstrates that Agent Sorbello testified as to his education, training, and experience in the field of identifying methamphetamine, including the production of methamphetamine. He indicated that he has completed 282 hours of special courses pertaining to the investigation, dismantling, and supervision of "clandestine drug laboratory operations," and has been involved in 500 cases involving methamphetamine. Accordingly, we find appellant has failed to prove his counsel was deficient in failing to object to Agent Sorbello's testimony where the state laid the proper foundation for Agent Sorbello to testify concerning the production of methamphetamine. See McKee, 91 Ohio St.3d at syllabus.
 {¶ 63} Similarly, appellant argues his trial counsel was ineffective in failing to object to *Page 18 
Keeton's testimony that she and appellant had previously purchased products to manufacture methamphetamine where the state failed to lay the proper foundation, and where such testimony constituted "other acts" in violation of Evid. R. 404(B). As previously discussed, however, the record demonstrates that Keeton's testimony as to her extensive history of methamphetamine use, as well as previous occasions on which she purchased pseudoephedrine with appellant, was presented to prove the existence of the conspiracy. In addition, such testimony established appellant's intent, plan, and knowledge with respect to the collection of pseudoephedrine pills on the date of the incident, such that the trial court properly admitted the evidence pursuant to Evid. R. 404(B). Accordingly, appellant has failed to demonstrate counsel was ineffective in failing to object to Keeton's testimony.
 {¶ 64} Finally, appellant argues his trial counsel was ineffective in failing to object to Hensley's testimony that appellant had previously provided her with methamphetamine, where such testimony constituted "other acts" in violation of Evid. R. 404(B). As previously indicated, we find such testimony was properly admitted to establish the existence of the conspiracy in this case, as well as appellant's intent, plan, and knowledge in collecting the pseudoephedrine pills. Accordingly we find appellant has failed to demonstrate his counsel was ineffective in failing to object to Hensley's testimony at trial.
 {¶ 65} Based upon the foregoing, appellant's second assignment of error is without merit and is hereby overruled.
 {¶ 66} Judgment affirmed.
WALSH, P.J., and YOUNG, J., concur.
[1] We note that appellant's speedy-trial rights were not violated even if we accept appellant's contention that he was arrested on April 13, 2007, and incarcerated for ten days from the date of his arrest until the original complaint was dismissed. Applying the triple count provision of the statute to the period of appellant's incarceration, 30 days of additional speedy-trial time may be charged to the state, for an aggregate period of 51 days. *Page 1