[Cite as *State v. Whitfield*, 2023-Ohio-240.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 29442 |
| | : | |
| v. | : | Trial Court Case No. 2021 CR 1185 |
| | : | |
| CALEB WHITFIELD | : | (Criminal Appeal from Common Pleas |
| | : | Court) |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on January 27, 2023

. . . . . . . . . . .

MATHIAS H. HECK, JR., by MICHAEL P. ALLEN, Attorney for Appellee

CHARLES M. BLUE, Attorney for Appellant

. . . . . . . . . . . .

TUCKER, J.

{¶ 1} Caleb Whitfield appeals from his conviction following a jury trial on charges of aggravated vehicular homicide, two counts of vehicular assault, failure to comply with the order or signal of a police officer, and resisting arrest.

{¶ 2} Whitfield contends the trial court erred in failing to dismiss his indictment on speedy-trial grounds. He challenges his convictions as being based on legally insufficient evidence and being against the manifest weight of the evidence. He also argues that the trial court erred in allowing the State to introduce evidence of a prior juvenile adjudication and in refusing to allow him to introduce certain relevant evidence. Finally, he asserts that the cumulative effect of the foregoing errors deprived him of a fair trial.

{¶ 3} For the reasons set forth below, we conclude that no speedy-trial violation occurred. With the exception of a specification accompanying the vehicular assault charges, we find that Whitfield's convictions were based on legally sufficient evidence and were not against the weight of the evidence. The State did present legally insufficient evidence to support a specification for having a suspended driver's license. As for Whitfield's evidentiary challenges, the record demonstrates harmless error. We also see no cumulative error depriving him of a fair trial.

{¶ 4} The trial court's judgment will be reversed insofar as it entered a judgment of conviction and sentenced Whitfield on two counts of vehicular assault as third-degree felonies, rather than fourth-degree felonies; the matter will be remanded for resentencing on those counts. In all other respects, the trial court's judgment will be affirmed.

## I. Background

{¶ 5} The present appeal stems from a high-speed police pursuit of a stolen vehicle that ended in a fatal accident. The primary issue at trial involved the identity of the driver when the accident occurred.

{¶ 6} The stolen vehicle, a black Ford truck with darkly-tinted windows, was taken

from a Sunoco gas station on June 23, 2020, when the owner left the engine running while he went inside to make a purchase. Two days later, a detective saw the truck when on patrol. The detective followed it and waited for additional patrol cars to respond. At one point, officers boxed in the truck and ordered its occupants to exit the vehicle. The driver of the truck responded by backing up, hitting a police cruiser, and fleeing on North Dixie Drive. A high-speed chase ensued, reaching speeds of nearly 100 miles per hour. While attempting a turn, the truck rolled and crashed into a vacant house, coming to a stop upside down.

{¶ 7} Officers saw Whitfield exit an open driver's side door and run from the crash site. Two other occupants of the truck, Jelani Shackelford and Joseph Hespeth, were seen crawling through the broken rear window. A fourth occupant, Rodnesha Thompson, was found hanging upside down in the passenger seat secured by a seat belt. Whitfield ignored orders to stop running and was taken into custody after a detective deployed a Taser. All four occupants of the truck were transported to the hospital. Shackelford and Hespeth were diagnosed with serious injuries, including multiple broken bones. Thompson died from her injuries while at the hospital. Whitfield, the least injured of the occupants, left the hospital of his own accord and against medical advice.

{¶ 8} At trial, a sergeant with the Montgomery County Sheriff's office testified that he had overheard Whitfield admit to hospital staff that he had been driving the truck. Immediately after the accident, Shackelford and Hespeth were uncooperative and did not answer investigators' questions. Police subsequently lost contact with them, and they could not be located prior to Whitfield's trial. A forensic scientist with the Miami Valley

Regional Crime Laboratory testified that at least three DNA profiles were found on the truck's steering wheel. Whitfield could not be excluded as the source of one of the profiles. According to the forensic scientist, one in every 415 African American individuals could be part of the profile from which Whitfield, an African American, could not be excluded.

{¶ 9} Whitfield testified in his own defense. He stated that Hespeth had been driving the truck, Thompson was in the front passenger's seat, he was in the driver's-side rear seat, and Shackelford was in the passenger's-side rear seat. According to Whitfield, Hespeth was taking him to sell some marijuana, which he had with him in a fanny pack. Whitfield did not remember making any statements to hospital staff about being the driver of the truck.

{¶ 10} Based on the evidence presented, a jury found Whitfield guilty of aggravated vehicular homicide, two counts of vehicular assault, failure to comply with the order or signal of a police officer, and resisting arrest. With regard to a specification accompanying the aggravated vehicular homicide and vehicular assault charges, the jury also found that Whitfield had been driving without a valid driver's license at the time of the accident.

{¶ 11} The trial court made statutory findings for consecutive sentences and imposed an aggregate prison term of 17 to 21 years. It also imposed a lifetime driver's license suspension on the most serious charges.

## II. Analysis

{¶ 12} Whitfield advances the following five assignments of error:

I. THE TRIAL COURT ERRED AS A MATTER OF LAW BY OVERRULING

APPELLANT'S MOTION TO DISMISS ON THE BASIS OF SPEEDY TRIAL GROUNDS.

II. APPELLANT'S CONVICTIONS ARE NOT SUPPORTED BY SUFFICIENT EVIDENCE TO PROVE GUILT BEYOND A REASONABLE DOUBT AND ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

III. THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT BY PERMITTING THE STATE TO ATTACK HIS CREDIBILITY WITH A JUVENILE ADJUDICATION.

IV. THE TRIAL COURT DENIED APPELLANT'S CONSTITUTIONAL RIGHT TO PRESENT A DEFENSE BY EXCLUDING RELEVANT EVIDENCE.

V. THE CUMULATIVE EFFECT OF THE ERRORS SET FORTH HEREIN DEPRIVED APPELLANT OF HIS CONSTITUTIONAL RIGHT TO A FAIR TRIAL.

## A. Speedy Trial

{¶ 13} In his first assignment of error, Whitfield raises a statutory speedy-trial issue. He argues that no tolling event or other reasonable and necessary continuance extended the speedy-trial deadline. Given that his trial occurred beyond that 90-day deadline, Whitfield reasons that he was entitled to dismissal of the indictment.

{¶ 14} The right to a speedy trial is guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Section 10, Article I of the Ohio

Constitution. This constitutional mandate has been codified in R.C. 2945.71, which designates specific time limits for bringing a defendant to trial. As relevant here, a defendant charged with a felony must be brought to trial within 270 days of arrest. R.C. 2945.71(C)(2). Each day that a defendant is held in jail in lieu of bail counts as three days when computing this time. R.C. 2945.71(E). This means a defendant held in jail must be brought to trial within 90 days of arrest.

{¶ 15} Speedy-trial time may be tolled by certain events delineated in R.C. 2945.72. Compliance with the speedy-trial statutes is mandatory, and they "must be strictly construed against the state." *State v. Cox*, 12th Dist. Clermont No. CA2008-03-028, 2009-Ohio-928, ¶ 12. "The rationale supporting speedy-trial legislation is to prevent inexcusable delays caused by indolence within the judicial system." *State v. Sanchez*, 110 Ohio St.3d 274, 2006-Ohio-4478, 853 N.E.2d 283, ¶ 8. "Review of a speedy-trial claim involves a mixed question of law and fact. Therefore, we defer to the trial court's factual findings if they are supported by competent, credible evidence, but we review the application of the law to those facts de novo." *State v. Long*, 163 Ohio St.3d 179, 2020-Ohio-5363, 168 N.E.3d 1163, ¶ 15.

{¶ 16} In the present case, Whitfield was held in jail upon his arrest. He did not waive his right to a speedy trial. Therefore, he was required to be brought to trial within 90 days unless one or more sufficient tolling events occurred. Whitfield's speedy-trial clock began on August 19, 2021, when he was arrested on his indictment. His trial commenced on February 22, 2022, which was beyond the 90-day time limit.

{¶ 17} Whitfield acknowledges that he requested a seven-day continuance of

proceedings from September 8, 2021, to September 15, 2021. Speedy-trial time was tolled for those seven days pursuant to R.C. 2945.72(H), which extends time for "[t]he period of any continuance granted on the accused's own motion." Whitfield also filed a request for discovery, which tolled speedy-trial time for a "reasonable" period. *State v. Belville*, Ohio Slip Opinion No. 2022-Ohio-3879, __ N.E.3d __, ¶ 19-20. But the parties' real dispute concerns the trial court's setting of an initial trial date outside of speedy-trial time and its subsequent rescheduling of that trial date after appointing new counsel to represent Whitfield.

**{¶ 18}** On September 16, 2021, the trial court held a hearing to discuss a trial date. During the hearing, the trial court explained that it was "impossible" to set a trial date for Whitfield any earlier than December 20, 2021. While acknowledging that this date was beyond the statutory speedy-trial deadline, the trial court noted that R.C. 2945.72(H) authorized tolling speedy-trial time for any "reasonable continuance" ordered by the trial court sua sponte. The trial court then noted the existence of a "tremendous backlog" of pending trials due to a prior COVID-19-related suspension of jury trials in Montgomery County. The trial court stated that it sometimes still had four or five jury trials scheduled for the same week and that it had approached other judges about taking Whitfield's case. The trial court advised Whitfield that all of the judges' dockets were full and that it simply could not set his trial date earlier than December 20, 2021. As a result, the trial court found a continuance of his trial until that date to be reasonable under R.C. 2945.72(H). The trial court memorialized its determination in an entry and order filed that same day.

**{¶ 19}** Thereafter, on October 8, 2021, Whitfield's attorney filed a motion to

withdraw as counsel, citing "an irreconcilable breakdown in communication between client and attorney." The trial court held an October 13, 2021 hearing on the motion and granted defense counsel permission to withdraw. During the hearing, the trial court advised Whitfield that it would appoint new counsel to represent him. The trial court then added, "I'm going to vacate the jury trial, because there's no way new counsel can be prepared within that period of time." The trial court journalized an entry appointing new counsel for Whitfield on October 14, 2021. One of the parties also sought and obtained a continuance from October 13, 2021 until October 20, 2021, but the record fails to make clear which party made the request. Whitfield's newly-appointed counsel subsequently sought and obtained another continuance from October 20, 2021 until October 27, 2021.

{¶ 20} The trial court held a scheduling conference on October 27, 2021. During that hearing, it advised Whitfield's new attorney that his appointment had caused the December 20, 2021 trial date to be continued. The trial court, the prosecutor, and defense counsel then agreed that February 22, 2022 was the next available date that would fit everyone's schedule. Defense counsel nevertheless objected to the new date to preserve a potential speedy-trial argument. The trial court responded by stating:

> Well, I explained to Mr. Whitfield upon his request for a new attorney that the jury trial would have to be set aside. I explained that to him. And I explained to him that you needed time to get up to speed. And due to the Court's calendar, it may be several months before we would set the retrial. That was all explained to him before the Court granted the motion to appoint new counsel.

So that will be the trial date set in this matter * * *.

Transcript Vol. I at 17.

{¶ 21} The next meaningful docket entry was an "Order of Appearance" filed on October 29, 2021. The order set a final pretrial date of February 16, 2022, and a new trial date of February 22, 2022.

{¶ 22} On February 9, 2022, Whitfield moved to dismiss his indictment on statutory speedy-trial grounds. His entire substantive argument was as follows:

In this case, the Defendant's right to a speedy trial has clearly been violated. Prior to the Defendant's speedy trial deadline expiring, the Court sua sponte continued his trial date to December 20th, or for 95 days. The Court's basis for the continuance was that it had cases set prior to the Defendant's speedy trial deadline that prevented it from bringing the Defendant to trial before the deadline. However, the Court did not specifically cite any of the cases that were set within that time frame. In addition, it is well known that many cases set for trial are settled before trial or continued. The Court did not leave open the possibility that this could occur and allow the Court to timely bring the Defendant to trial. The Court also had the option of waiting until the Defendant's speedy trial deadline approached so that it could try and schedule the Defendant for trial prior to the deadline. Simply continuing the Defendant's case for 95 days, or 32 days past his speedy trial deadline, was unreasonable.

In addition, assuming arguendo that the Trial Court's continuance to December 20th was reasonable, it only extended the Defendant's right to a

speedy trial by 32 days. The Trial Court did not set the Defendant's trial within those remaining 32 days. As of the date February 8, 2022, 50 days have elapsed since December 20th and, therefore, the Defendant's right to a speedy trial has been violated.

Defendant's February 9, 2022 Motion to Dismiss at 3.

{¶ 23} The trial court overruled Whitfield's motion to dismiss in a February 18, 2022 decision. Reiterating its earlier explanation about ongoing coronavirus-related docket congestion and a subsequent continuance necessitated by Whitfield's request for new counsel, the trial court found no speedy-trial violation.

{¶ 24} On appeal, Whitfield primarily challenges the trial court's setting of a December 20, 2021 trial date based on docket constraints. He asserts that the suspension of jury trials in Montgomery County Common Pleas Court was lifted in December 2020 and argues that COVID-19 "cannot remain a basis for denial of statutory speedy trial rights well after the pandemic." With regard to the subsequent continuance related to Whitfield's request for new counsel, he does not challenge or even address the merits of the trial court's decision to order a continuance to allow new counsel to become acquainted with the case. Whitfield argues only that the trial court failed to journalize an entry containing reasons justifying this continuance.

{¶ 25} Upon review, we find Whitfield's speedy-trial challenge to be unpersuasive. With regard to the initial December 20, 2021 trial date, the trial court made a detailed record explaining why it was impossible for Whitfield to be tried within the speedy-trial deadline and why a short continuance beyond that deadline was necessary. In addition to explaining itself on the record during a hearing, the trial court incorporated its reasoning

into a timely journal entry.

**{¶ 26}** Addressing a similar situation, this court recently upheld a trial court's sua sponte tolling of speedy-trial time based on docket congestion attributed to the lingering impact of the coronavirus pandemic on jury trials. In *State v. Hart*, 2d Dist. Montgomery No. 29252, 2022-Ohio-4550, the trial court tolled a defendant's speedy-trial time from October 21, 2020 until January 19, 2021, citing docket congestion and the recent appointment of new counsel to represent the defendant. *Id.* at ¶ 85. Thereafter, the trial court filed another tolling entry on January 12, 2021, tolling speedy-trial time until June 28, 2021. In support, the trial court cited a new temporary emergency order suspending jury trials in Montgomery County Common Pleas Court through March 27, 2021, as well as an Ohio Attorney General's opinion and Ohio Supreme Court guidance limiting in-person meetings, and the fact that Montgomery County remained under a level three COVID-19 public emergency. *Id.* at ¶ 86. In finding no speedy-trial violation, we held that the trial court had fully explained and justified these continuances. Other Ohio courts also have recognized the reasonableness of coronavirus-related tolling due to docket congestion even after Ohio's declaration of emergency officially expired on June 30, 2020. *State v. Beal*, 2021-Ohio-3812, 179 N.E.3d 754, ¶ 35 (5th Dist.); *see also State v. Hairston*, 2d Dist. Montgomery No. 20844, 2006-Ohio-2669, ¶ 15 ("It is well settled that docket congestion may be grounds for a reasonable continuance under R.C. § 2945.72(H), provided that the trial court gives a timely explanation for its action.").

**{¶ 27}** Here the trial court timely set forth detailed justifications for establishing a trial date roughly a month beyond the speedy-trial deadline. Its reasons included the

impossibility of trying Whitfield sooner due to a crowded docket based on real challenges facing the judicial system in the wake of the global pandemic. Because the trial court's tolling of speedy-trial time to accommodate a December 20, 2021 trial date was reasonable in both purpose and length, we find no statutory speedy-trial violation based upon it.

{¶ 28} With regard to the subsequent continuance until February 22, 2022, Whitfield's only argument on appeal is that the trial court failed to journalize an entry reciting its justification for the continuance. This argument fails for at least two reasons. First, Whitfield did not raise it below in his speedy-trial motion. Nowhere in his motion did he argue that dismissal on speedy-trial grounds was required because the trial court failed to journalize an entry explaining the basis for establishing a February 22, 2022 trial date. Second, a trial court is required to journalize such an entry only when it sua sponte continues a trial date. In such a case, it must issue a journal entry ordering the continuance and setting forth its reasoning prior to expiration of speedy-trial time. *State v. King*, 70 Ohio St.3d 158, 162-163, 637 N.E.2d 903 (1994).

{¶ 29} Here the trial court set forth its justification for continuing Whitfield's trial date to February 22, 2022 during a hearing, not in a journal entry, and it separately journalized the new-trial date. Nothing more was required, however, because the trial court found a delay until February 22, 2022 to be necessitated by Whitfield's motion for new counsel. That tolling event was attributable to Whitfield's own actions and was not a sua sponte act by the trial court. *See Belville,* Ohio Slip Opinion No. 2022-Ohio-3879, __ N.E.3d __, at ¶ 30 (recognizing that "*King* dealt with the requirement that when a trial

court sua sponte continues a trial date beyond the speedy-trial period, it must issue a journal entry setting forth the continuance and the reason therefor prior to the expiration of the speedy-trial period"). Any period of delay necessitated by a defendant's own motion automatically acts as a tolling event. *Id.* at ¶ 31.

{¶ 30} For the foregoing reasons, we see no error in the trial court's overruling of Whitfield's motion to dismiss the charges against him on statutory speedy-trial grounds. The first assignment of error is overruled.

## B. Legal Sufficiency and Manifest Weight of Evidence

{¶ 31} In his second assignment of error, Whitfield challenges the legal sufficiency and manifest weight of the evidence to sustain his convictions. In particular, he contends the State failed to prove that he was driving the stolen truck at the time of the accident. He also claims the evidence did not support a finding that he had a suspended license.

{¶ 32} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 33} Our analysis is different when reviewing a manifest-weight argument. When a conviction is challenged on appeal as being against the weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable

inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). A judgment should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

**{¶ 34}** With the foregoing standards in mind, we reject Whitfield's legal-sufficiency and manifest-weight arguments predicated on the State's failing to prove he was driving the truck. Joseph Solomon, a sergeant with the Montgomery County Sheriff's office, testified that he heard Whitfield admit to hospital personnel that he was driving the truck. This testimony alone, if believed, was legally sufficient to support a finding that he was the driver. But the State presented additional evidence supporting an inference that Whitfield was the driver. Following the accident, Whitfield was seen exiting the driver's door of the overturned vehicle, Hespeth and Shackelford were seen crawling out the broken back window, and Thompson was found in the front passenger's seat. In addition, Whitfield could not be excluded as the source of a DNA profile found on the truck's steering wheel, and only one in every 415 African American's could be a source of the profile. Finally, the driver's area of the truck sustained the least damage, and Whitfield unquestionably suffered by far the least serious injuries of the four occupants.

**{¶ 35}** In light of the foregoing evidence, we believe a rational trier of fact could have found that Whitfield was driving the truck at the time of the accident. We also are

unpersuaded that the jury clearly lost its way and created a manifest miscarriage of justice. This is not an exceptional case in which the evidence weighed heavily against the convictions predicated on Whitfield's being the driver of the truck.

{¶ 36} As noted above, however, Whitfield also challenges the legal sufficiency and manifest weight of the evidence to support a specification accompanying his two vehicular-assault convictions. The specification, which is found in R.C. 2903.08(C)(2), elevates vehicular assault from a fourth-degree felony to a third-degree felony if "at the time of the offense, the offender was driving under a suspension imposed under Chapter 4510 or any other provision of the Revised Code." A "suspension" is defined as the permanent or temporary withdrawal of a driver's license or the privilege to obtain a license. R.C. 4510.01(H).

{¶ 37} Here the parties stipulated that Whitfield "did not have a valid driver's license." In fact, the record reflects that he never has had a driver's license. But the State presented no evidence whatsoever that Whitfield was driving under a license "suspension" at the time of the accident. He simply was driving without a license, which is insufficient to support the specification under R.C. 2903.08(C)(2).[1] We note too that the jury's verdict forms for the vehicular-assault charges included a finding that Whitfield was driving without a license, not that he was driving under a suspension. This finding

---

[1] The vehicular-assault specification under R.C. 2903.08(C)(2) differs from the aggravated-vehicular-homicide specification under R.C. 2903.06(B)(2)(b)(i), which applies if the offender was driving under suspension or was driving without a valid driver's license. The fact that the aggravated-vehicular-homicide specification covers both driving under suspension and driving without a license whereas the vehicular-assault specification covers only driving under suspension makes clear that the legislature intended to distinguish the two situations.

was insufficient to enhance the offense-level of the two vehicular-assault convictions.

{¶ 38} For the foregoing reasons, we agree with Whitfield that the specification accompanying his vehicular-assault convictions was based on legally insufficient evidence and was against the weight of the evidence. The two third-degree-felony vehicular-assault convictions will be reversed, and the case will be remanded for the trial court to impose those convictions as fourth-degree felonies and to resentence Whitfield accordingly.

{¶ 39} The second assignment of error is sustained in part and overruled in part.

### C. Admission of Juvenile Adjudication

{¶ 40} In his third assignment of error, Whitfield contends the trial court erred in allowing the State to use a juvenile adjudication to challenge his credibility. This argument concerns the disclosure of a prior burglary offense committed when Whitfield was a minor.

{¶ 41} On cross-examination, Whitfield volunteered that he "had been in and out" of juvenile detention and for that reason had not seen Jelani Shackelford very often. The prosecutor then inquired whether Whitfield had a prior felony for burglary. Defense counsel objected just as Whitfield simultaneously responded that the burglary had occurred when he was 14 years old. The trial court held a sidebar at which the prosecutor argued that it could cross-examine about the burglary because it was a "crime of dishonesty." The trial court agreed, ruling that the prosecutor could establish Whitfield's admission to burglary as a juvenile without getting into the facts of the offense. Therefore, the trial court allowed Whitfield's affirmative response to stand. The prosecutor then moved on, eliciting an admission from Whitfield that he had "other felonies" on his record

as an adult. The trial court subsequently instructed the jury that it could consider Whitfield's prior offenses only to test his credibility and to determine the weight to be given to his testimony.

{¶ 42} On appeal, Whitfield contends Evid.R. 609(D) and R.C. 2951.357(H) collectively prohibit evidence of a juvenile adjudication to be used for impeachment purposes. For its part, the State concedes that the admission of testimony about his burglary adjudication was error.[2] Nevertheless, the State contends Whitfield did not specifically object to cross-examination on the basis that the burglary involved an inadmissible juvenile adjudication. The State claims the sidebar addressed whether burglary was a crime of dishonesty, not whether a juvenile adjudication was admissible to impeach Whitfield. Therefore, the State maintains that we are limited to reviewing for plain-error. Alternatively, the State suggests that the admission of testimony about Whitfield's burglary offense was invited error.

{¶ 43} Upon review, we agree that the trial court's admission of testimony about the burglary adjudication for general impeachment purposes was erroneous. Under Evid.R. 609(A)(3), evidence of conviction of a crime of dishonesty generally is admissible to attack the credibility of a witness. Offenses committed by a minor, however, specifically are addressed by Evid.R. 609(D), which provides that "[e]vidence of juvenile adjudications is not admissible except as provided by statute enacted by the General Assembly." The pertinent statute, R.C. 2151.357(H), provides that evidence of a juvenile adjudication "is not admissible to impeach the credibility of the child in any action or proceeding." Thus,

---

[2] *See* Appellee's Brief at 16 ("Even though the testimony about Whitfield's juvenile conviction was error, it did not rise to the level of plain error and did not prejudice him.").

this court has recognized that the evidence rules and Revised Code "prohibit the use of a juvenile adjudication for purposes of general impeachment of a witness's credibility." *State v. Demoss*, 2d Dist. Champaign No. 2001-CA-5, 2002 WL 360581, *4 (March 8, 2002); *see also State v. Goodwin*, 7th Dist. Mahoning No. 99 CA 220, 2001 WL 1740065, *4 (Sept. 24, 2001) ("Where the submission of the juvenile adjudication is done merely to disclose that the adjudication exists in order to denigrate the former offender's general credibility, the juvenile adjudication is inadmissible."); *State v. Taylor*, 12th District Fayette No. 2018-11-021, 2019-Ohio-3437, ¶ 33 ("[D]efense counsel sought admission of Watkins' adjudication to show that Watkins was lying, that is, solely to impeach his credibility, which is the exact purpose for which such evidence is inadmissible under R.C. 2151.357(H) and Evid.R. 609(D).").

{¶ 44} The more difficult issue involves determining the proper standard of review. Contrary to the State's argument, the invited-error rule does not apply. The prosecutor improperly questioned Whitfield about having a prior felony for burglary. The question itself was improper because the burglary involved a juvenile adjudication when Whitfield was 14 years old. Defense counsel objected just as Whitfield started to answer the question. Under these circumstances, we fail to see how Whitfield "invited" the trial court's erroneous evidentiary ruling.

{¶ 45} The State also asserts that plain-error review applies because defense counsel did not object on the grounds that a juvenile adjudication is inadmissible. According to the State, defense counsel argued only that burglary was not a crime of dishonesty. The complete nature of defense counsel's objection is impossible to

determine, however, because seemingly-relevant portions of counsel's remarks during the sidebar have been transcribed as "(indiscernible)." Defense counsel does appear to have questioned whether burglary is a crime of dishonesty, which it is. *See State v. Lamp*, 7th Dist. Columbiana No. 20 CO 0001, 2021-Ohio-2354, ¶ 63.

{¶ 46} But even if we assume that defense counsel also objected to the admission of Whitfield's testimony about the burglary offense because it was a juvenile adjudication, the trial court's error in admitting the evidence was harmless beyond a reasonable doubt. At trial, Whitfield himself admitted that he actively had been engaged in selling methamphetamine and marijuana. He also acknowledged on cross-examination that his adult record included multiple "other felonies." In light of these admissions of criminal activity by Whitfield, he was not prejudiced by an isolated reference to his juvenile adjudication. Accordingly, the third assignment of error is overruled.

## D. Exclusion of Evidence

{¶ 47} In his fourth assignment of error, Whitfield claims the trial court deprived him of his constitutional right to present a defense by excluding relevant evidence. This argument concerns his attempt to cross-examine a detective about drugs being found in a fanny pack that appeared to have been ejected from the overturned truck.

{¶ 48} On direct examination, the detective testified that the fanny pack appeared to have fallen out of the truck when it rolled. The detective added that the contents of the fanny pack included identification bearing Whitfield's name. On cross-examination, defense counsel asked whether any illegal substances were found in the fanny pack. The State objected, arguing that the case was not a drug case and that the presence of illegal

substances was irrelevant. Defense counsel responded that the presence of drugs in Whitfield's fanny pack would rebut an inference that he fled the scene on foot because he had been driving the truck. Defense counsel theorized that Whitfield may have fled on foot because he knew drugs were in the fanny pack. Therefore, the presence of drugs could negate an inference of consciousness of guilt of vehicular homicide and vehicular assault as the reason for his running. The trial court sustained the State's objection, declaring the presence of drugs in the fanny pack to be "irrelevant."

{¶ 49} "[T]he admission of evidence lies within the broad discretion of the trial court, and a reviewing court should not disturb evidentiary decisions in the absence of an abuse of discretion that has created material prejudice." *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 62. Here the trial court acted unreasonably, and thereby abused its discretion, in finding evidence about the presence of drugs in the fanny pack to be irrelevant. Whitfield's attempted flight from the scene of the accident potentially supported an inference of consciousness of guilt of vehicular homicide and vehicular assault. In other words, it potentially supported an inference that he had been driving the truck, which was the primary issue in the case. One way for Whitfield to rebut that inference was to provide an alternative explanation for why he ran. The presence of drugs in the fanny pack supplied that alternative explanation, enabling Whitfield to argue that he fled on foot because of his drug possession, not because he had been driving. Therefore, the presence of drugs in the fanny pack was relevant, and the trial court acted unreasonably in finding otherwise.

{¶ 50} Despite the foregoing conclusion, we are convinced that Whitfield was not

materially prejudiced by the trial court's ruling. Although defense counsel was not permitted to cross-examine the detective about the contents of the fanny pack, Whitfield testified in his own defense and told the jury what was in the pack. He explained that Hespeth was driving him to a location to sell marijuana at the time of the accident. Whitfield testified that the marijuana had been in his fanny pack. Although cross-examining the detective may have corroborated Whitfield's testimony, the jury did hear about drugs being in the fanny pack.

{¶ 51} We note too that the State's initial closing argument did not even assert an inference of consciousness of guilt arising from Whitfield's attempted flight on foot. The State only mentioned his running after the accident as evidence to support a resisting-arrest charge. Defense counsel first raised the issue of inferences arising from Whitfield's attempted flight from the accident scene in his closing argument. In particular, defense counsel suggested that Whitfield may have gotten out of the car and fled on foot because he was in possession of marijuana. Defense counsel specifically argued that Whitfield's attempted flight was not proof that he had been driving the truck. In response to this argument, the State argued in rebuttal that Whitfield ran because he had been driving the truck and knew he was in trouble. Notably, however, the State did not dispute Whitfield's claim about being in possession of marijuana. In fact, the State stressed Whitfield's testimony admitting that he was a drug dealer. Finally, we note that the trial court's instructions to the jury did not include a specific instruction about inferring consciousness of guilt from flight.

{¶ 52} Based on our review of the record, we believe Whitfield adequately

presented his argument about running from the accident scene because he was in possession of marijuana. We are convinced that the trial court's evidentiary ruling precluding cross-examination of the detective regarding the contents of the fanny pack did not materially prejudice Whitfield's defense. The trial court's error in disallowing the cross-examination was harmless beyond a reasonable doubt. Accordingly, the fourth assignment of error is overruled.

### E. Cumulative Error

{¶ 53} In his fifth assignment of error, Whitfield raises a claim of cumulative error. He contends the errors alleged above, when considered in combination, deprived him of a fair trial.

{¶ 54} It is true that separately harmless errors can violate a defendant's right to a fair trial when they are aggregated. *State v. Madrigal*, 87 Ohio St.3d 378, 397, 721 N.E.2d 52 (2000). To find cumulative error, we first must find multiple errors committed at trial. *Id.* at 398. We then must find a reasonable probability that the outcome below would have been different but for the combination of separately harmless errors. *State v. Thomas*, 2d Dist. Clark No. 2000-CA-43, 2001 WL 1103328, *9 (Sept. 21, 2001).

{¶ 55} In our analysis above, we found that the trial court erroneously applied a specification for driving with a suspended license. That discreet error affects the felony level of Whitfield's two vehicular-assault convictions. We fail to see, however, how that error could have impacted any other aspect of his trial.

{¶ 56} The only other errors we found above concerned the trial court's allowing the introduction of evidence about Whitfield's prior juvenile adjudication and disallowing

cross-examination of a detective about the contents of the fanny pack. Even when considered in the aggregate, we are unpersuaded that these two evidentiary rulings deprived Whitfield of a fair trial. Accordingly, his fifth assignment of error is overruled.

### III. Conclusion

**{¶ 57}** Having sustained Whitfield's second assignment of error in part, we reverse the trial court's judgment insofar as it entered a judgment of conviction and sentenced Whitfield on two counts of vehicular assault as third-degree felonies. Those convictions are reversed, and the case is remanded to the trial court for resentencing on those counts as fourth-degree felonies. In all other respects, the trial court's judgment is affirmed.

. . . . . . . . . . . . .


WELBAUM, P.J. and LEWIS, J., concur.